James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
PATTERSON LAW GROUP APC
402 West Broadway, 29ᵗʰ Floor
San Diego, CA 92101
Telephone: (619) 398-4760
Facsimile: (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

Bruce W. Steckler (pro hac vice pending)
Mazin A. Sbaiti, State Bar No. 275089
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181
bstecker@baronbudd.com
msbaiti@BaronBudd.com


*Attorneys for Plaintiffs and the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COX, JOSEPH M. LYNCH, and NICOLE HALL, on behalf of themselves and all others similarly situated, | CASE NO.: **'11 CV 2711 L RBB** |
| Plaintiffs, | CLASS ACTION COMPLAINT FOR: |
| vs. | 1. **RICO**<br>2. **ELEC. FUNDS TRANS. ACT VIOL.**<br>3. **DECLARATORY RELIEF**<br>4. **CONVERSION**<br>5. **NEGLIGENCE** |
| CLARUS MARKETING GROUP, LLC., a Connecticut corporation; PROVIDE-COMMERCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive, | 6. **CONST. RIGHT TO PRIVACY VIOL.**<br>7. **INVASION OF PRIVACY**<br>8. **CLRA VIOL.**<br>9-10. **UNFAIR BUSINESS PRAC. ACT VIOL**<br>11. **CONN. UNFAIR TRADE PRAC. ACT VIOL.**<br>12. **MICHIGAN COMPILED LAWS VIOL.** |
| Defendants. | **[JURY TRIAL DEMANDED]** |

Plaintiffs Daniel Cox, Joseph Lynch, and Nicole Hall on behalf of themselves and all others similarly situated, allege upon personal knowledge, information and belief as follows:

## I. DEFENDANTS ADVERTISED A 'FREE' DISCOUNT AND THEN SLIPPED IN AN UNAUTHORIZED MONTHLY CHARGE FOR A MEMBERSHIP PROGRAM

1.     Plaintiffs bring this class action against Defendants Clarus Marketing Group, LLC ("CMG") and Provide-Commerce, Inc. ("Provide-Commerce") for unlawfully using their payment information to generate remarkable monthly profits. The scam is simple: While consumers are completing their online purchases from one of the many websites owned and operated by Provide-Commerce, Defendants present an offer for "Free Shipping" on this and 12 future transactions. By clicking on the offer, Plaintiffs were surreptitiously enrolled by Defendants into a membership program operated by CMG that costs around $9.00 to $20.00 per month. CMG then charges consumers' credit and debit cards monthly until they realize what is happening and demand that their memberships be cancelled. Defendants made multi-millions of dollars from this practice from thousands of consumers across the country.

2.     Consumers never agreed to subscribe to any membership program. They were told that this was a "Free Shipping" offer as an inducement to shopping with Provide-Commerce. But the offer was not free at all. Its true terms were either missing or obscured on the operative webpages. There was no obvious indication that repeat billing was part of the deal. Consumers reasonably interpreted Defendants' offer as an inducement to shop again later. That is how coupons work.

3.     The key here is that consumers were never required to enter their debit card number, credit card number, address, contact information, or any other relevant payment information ("Private Payment Information") to enroll in CMG's membership club. Rather, Provide-Commerce provided this information directly to CMG under the guise that consumers authorized this to happen. Defendants directed consumers to enter innocuous information such as an email address and zip code to create a pretext to charge their debit and credit cards based on the untenable claim that consumers can lawfully "authorize" Provide-Commerce to pass their billing information to CMG, and "authorize" CMG to begin billing their cards based solely on the provision of an email address or zip code. Consumers were only asked to enter their email

addresses and/or zip codes, which are relatively harmless means of contact and that are freely exchanged and provided. An email address or zip code is not a signature, mark of acceptance, or in any way related to entering an ongoing financial obligation with a third-party. Consumers simply have no reason to believe that they could "authorize" someone to charge their credit or debit cards merely by giving out their email address and/or zip code. And, in fact, credit and debit card purchases cannot be authorized in this manner.

## II.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1693m(g) (EFTA) and 18 U.S.C. §§ 2510, *et seq.* (ECPA). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5.      Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this action because this Court has personal jurisdiction over the Defendants under 28 U.S.C. § 1391(c), and a substantial amount of the events giving rise to the claim occurred in this District.

## III.  THE PARTIES

6.      Plaintiff Daniel Cox is an individual who at all times mentioned herein resided, and continues to reside, in Alameda County, California.

7.      Plaintiff Joseph Lynch is an individual who at all times mentioned herein resided, and continues to reside, in Howell, Michigan.

8.      Plaintiff Nicole Hall is an individual who at all times mentioned herein resided, and continues to reside, in Norwell, Massachusetts and is a citizen of Massachusetts.

9.      Defendant Provide-Commerce is a Delaware corporation with a principal place of business located at 4840 Eastgate Mall, San Diego, California 92121. Provide-Commerce is an e-commerce company that operates at least five online stores: RedEnvelope, ProFlowers, Cherry Moon Farms, Secret Spoon, and Sharri's Berries. At all times relevant to this dispute, Provide-Commerce's principal place of business was California, it actively solicited and engaged in business and commerce in this jurisdiction, all significant decision-making with respect to the conduct alleged herein occurred in California, and it committed torts in this jurisdiction the impacts of which were felt in this jurisdiction, directly and through its aiding and abetting of, and

1    conspiracy with, CMG in committing the acts complained of herein. Provide-Commerce's terms

2    and conditions of use published on its website contain a choice of law clause selecting California

3    law for any legal action "regardless of conflict of law principles."

4         10.    Defendant CMG is a Connecticut corporation with its principal place of business

5    at 449 Silas Deane Hwy., Wethersfield, Connecticut 06109. CMG is an online marketing

6    company. At all times relevant to this dispute, CMG actively solicited and engaged in business

7    and commerce in this jurisdiction, and committed torts in this jurisdiction the impacts of which

8    were felt in this jurisdiction. CMG engaged in such behavior both directly and through its aiding

9    and abetting of, and conspiracy with, Provide-Commerce in committing the acts complained of

10   herein. CMG's membership agreements contain a provision indicating that Connecticut law

11   governs membership disputes, but that nothing in the agreements will deprive anyone of the

12   benefits of their own state's consumer protection laws.

13        11.    Plaintiffs and the Class are ignorant about the true names of Defendants sued as

14   DOES 1 through 50, inclusive, and their wrongful conduct, and therefore sue these Defendants

15   by fictitious names. Plaintiffs and the Class will seek court leave to amend this complaint to

16   allege their true names and capacities when ascertained. Plaintiffs and the Class allege on

17   information and belief that at all relevant times, DOES 1-50, inclusive, were agents, servants,

18   employees, representatives, partners, and related or affiliated entities of Defendants, and in doing

19   the things hereinafter mentioned, were acting in the course and scope of their agency,

20   employment, or retention with defendants' permission, consent, authority and ratification.

21   **IV.    THE PARTIES' JOINT LIABILITY**

22        12.    At all times relevant, Defendants aided and abetted, encouraged and rendered

23   substantial assistance to each other in breaching their obligations to consumers, including

24   Plaintiffs and the Class members. For example, Provide-Commerce aided and abetted and

25   substantially assisted CMG with obtaining consumers' Private Payment Information and

26   charging their credit and debit account without authorization. Defendants were aware of their

27   wrongdoing and that their conduct substantially assisted the other's wrongdoing.

28        13.    Defendants are and were acting as the agents, servants, employees, joint

venturers, and representatives of, and with the knowledge, consent and permission of, and in conspiracy with each other and within the course, scope and authority of that agency, service, employment, representation, joint venture, and conspiracy. Defendants' conduct was fully ratified by each other. Specifically, Provide-Commerce contracted with CMG to create and implement a membership program and to jointly promote and operate the program in connection with their respective websites. Provide-Commerce expressly acknowledges its relationship with CMG, describing it as a third-party marketing partner and joint venturer. The Freeshipping program was managed and implemented by CMG. Thus, the actions, failures to act, and breaches alleged herein were approved, ratified, and done with the cooperation and knowledge of both Defendants.

14. Defendants conspired to profit from unauthorized charges to consumers' debit and credit accounts by using the data pass process. Pursuant to this conspiracy, Defendants, their agents, servants, and employees, acting both jointly and severally, committed or caused to be committed a series of unlawful acts, namely: making, or causing to be made, unauthorized charges to consumers' credit and debit cards. These acts were made in furtherance of the conspiracy.

15. Defendants are jointly liable for the violations complained of herein. Provide-Commerce allowed CMG to infiltrate the interaction between Provide-Commerce and its consumers to exploit consumers' ingrained habits and widely shared assumptions about the usual steps involved in online shopping transactions.

16. Provide-Commerce lured consumers to its websites to purchase goods and services. Provide-Commerce then gave CMG access to its consumers. Through sleight of hand, CMG obtained consumers' Private Payment Information and extracted money from them via unauthorized charges to their credit and debit cards. CMG could not have done this without Provide-Commerce's help. In fact, Defendants entered into an agreement that specifically allows CMG to manipulate Provide-Commerce's websites to solicit consumers. This agreement requires technological as well as logistical coordination and allows Defendants to share the spoils from the unauthorized charges by CMG paying Provide-Commerce commissions and

bounties on each "acquisition."

## IV. PLAINTIFFS' EXPERIENCE WITH FREESHIPPING.COM INSIDERS-CLUB

17. Plaintiffs Cox, Lynch, and Hall purchased flowers from Provide-Commerce's website, ProFlowers.com. After inputting their payment information, and just before they clicked on the transaction button, Provide-Commerce's website generated a coupon for free shipping for this and 12 future transactions. Plaintiffs clicked on the offer to receive free shipping and complete their purchase transaction. They were directed to a webpage that asked for their email addresses and zip codes:

> **Exclusive OFFER ProFlowers® Get Free Shipping on THIS order!**
> **PLUS, Free Shipping Rebates On 12 Future Proflowers® Orders!**
> **One-Time Offer. Please Confirm Your Email And Zip Code As Your**
> **Electronic Signature To Activate Your Benefits**.

There was no obvious indication that the provision of an email address and zip code was for "benefits" other than the expressly offered "Free Shipping on THIS order! PLUS, Free Shipping Rebates On 12 Future Proflowers Orders."

18. Plaintiffs were never told that they were no longer on the Proflowers.com website or that they had been directed to a CMG interface. They also were never informed of the truth about what was going to happen to their Private Payment Information – that by accepting the "free" shipping offer, they were supposedly "authorizing" CMG to charge their debit and credit cards.

19. Plaintiffs assumed that they could not authorize someone to charge their payment cards merely by providing an email address and zip code. These are not signatures, marks of consent, or in any way associated with credit or debit billing. This is also not a known or accepted method to enter into or authorize a payment obligation. Because an email address and zip code cannot constitute lawful authorization for credit and debit card charges, Plaintiffs had no obligation to locate and read the voluminous amount of small print on CMG's webpage.

/ / /

/ / /

20.     The hidden "small print" that Defendants claim  justifies their nefarious activities, stated, for example:

> Start your NO COST 30-day review period with our compliments and claim the introductory cash-back rebate on your shipping charges, up to $15.00.   If you decide not to continue your FreeShipping.com Insiders-Club membership, simply log on to cancel during your review period.  Otherwise, we'll automatically extend Insiders-Club benefits for just $9.97 per month, billed by FreeShipping.com to the credit card you entered during your ProFlowers purchase.  Please note, by signing up and clicking the "Submit" button, your original Enrollment Details will be stored on our servers, as will the following information which will be PGP encrypted and transmitted securely through SSL encryption from your most recent ProFlowers order to FreeShipping.com to secure your membership: credit card information; name; billing address; and order ID number.   Your credit card will not be charged during your NO COST 30-DAY REVIEW PERIOD.

21.     This so-called disclosure incorrectly assumes that Plaintiffs could lawfully authorize CMG to begin billing their accounts merely by entering an email address and zip code, and without providing any billing information to CMG.  This is ridiculous.

22.     A few months ago, Plaintiff Cox discovered unauthorized charges of $8.97 each month to his debit card and Plaintiff Lynch discovered unauthorized charges of $12.97 each month to his debit card.  In approximately February 2010, Plaintiff Hall discovered unauthorized charges of $11.97 each month to her credit card.

23.     After closely examining their previous debit and credit card statements and investigating the matter, Plaintiffs discovered that CMG had been charging their debit and credit card accounts for numerous months in connection with CMG's FreeShipping.com Insiders-Club program.   They were surprised to see the charges since they never intended to join any membership program or authorized Provide-Commerce to share access to their Private Payment Information with CMG.  They immediately cancelled their membership.

24.     The coupon offer that popped up on Proflowers.com was confusing and misleading because:

> i.  The coupon offer appeared to come from Proflowers.com because (1) it was presented on the Proflowers.com checkout webpage page, (2) it appeared to be a "thank you" for being a loyal Proflowers.com customer,

and (3) the coupon was for free shipping on this and future Proflowers.com purchase.

   ii. The coupon appeared to be "free" because: (1) coupons are generally free, (2) there was nothing on the initial coupon offer indicating Plaintiffs would have to pay for the coupon, and (3) it appeared to be an incentive or "thank you" for Plaintiffs' purchases at Proflowers.com.

   iii. The original offer located on the Proflowers.com checkout page directed Plaintiffs to click on the coupon to redeem it, but when they clicked on it, they were taken to CMG's third-party pop-up window to purportedly enroll in a membership program.

   iv. The pop-up window appeared on top of the Proflowers.com check out page leading Plaintiffs to believe they were still doing business with Proflowers.com

   v. The pop-up window did not require Plaintiffs to provide their name, debit card number, or billing address, which would have put them on notice that they were entering into a second transaction with a different company, and authorizing this new company to charge them.

   vi. The pop-up window included a massive amount of information that was designed to dissuade consumers from reading the page and to hide the true nature of the coupon offer.

25. Provide-Commerce violated its own published policy, indicating that it would only transmit Plaintiffs' Private Payment Information to a third party to effectuate a purchase transaction from a Provide-Commerce website:

> Personally Identifiable Information might include your name, mailing address, telephone number, mobile phone number, email address, and other identification and contact information…. We may also collect certain financial information, like your credit card number… whenever we do so, we will attempt to provide a link to this Policy so that you can confirm how this information will be used. With this information, we can fill your service and product orders and better provide you with personalized services. You also may have the option of importing information into certain Sites from third-party software.
>
> …

> Except as otherwise stated in this Policy, we do not sell, trade or rent your Personally Identifiable Information collected on our Sites to others. The information collected by our Sites is used to process orders, to keep you informed about your order status, to notify you of products or special offers that may be of interest to you, and for statistical purposes for improving our Sites. We will disclose your Personally Identifiable Information to third parties for tracking purposes, to charge your credit card (or process your check or money order, as appropriate), fill your order, improve the functionality of our Sites, customize our marketing efforts with you and perform statistical and data analyses, deliver your order and deliver promotional emails to you from us. These third parties may not use your Personally Identifiable Information other than to provide the services requested by us.

26. Plaintiffs never received notice that they enrolled in a membership program or a copy of their purported "authorization" for CMG to charge their debit or card cards. Plaintiffs had difficulty detecting the monthly charges because the charges were for a small amount and from an unfamiliar vendor.

27. Any policies that would allow Provide-Commerce to transmit Private Payment Information to CMG via data pass are unconscionable.

## V. DEFENDANTS' PRACTICES HAVE BEEN EXPRESSLY BANNED

28. Plaintiffs' experience mirrors those of thousands of other consumers. In fact, the Internet is replete with consumer complaints about CMG and its membership programs, which can be found on various consumer protection websites such as www.ripoffreport.com, and www.complaintsboard.com.

29. Because consumer complaints have been so pervasive, in May 2009, Senator John D. Rockefeller IV, Chairman of the U.S. Senate Committee on Commerce, Science, and Transportation, investigated e-commerce marketing practices that generate thousands of monthly charges to consumer credit and debit cards. The investigation focused on marketing companies with the same business model as CMG. The Committee found, among other things, that the data pass enrollment process was deceptive and misleading, particularly since "[c]onsumers rely on the process of providing a credit card number as a barrier to unexpected charges." (*See* Ex. 1, Preliminary Report; Ex. 2, Final Report.)

30. The Committee found that companies like CMG use "aggressive sales tactics intentionally designed to mislead online shoppers. [It] exploits shoppers' expectations about the

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

1   online purchasing process to charge millions of consumers each year for services the consumers

2   do not want and <u>do not understand that they have purchased.</u>" (Exhibit. 1, Preliminary Report at

3   p. 30, "Conclusion") (emphasis supplied).

4       31.     The Committee concluded that once marketing companies like CMG obtained

5   consumers' Private Payment Information, they continued to charge "consumers month after

6   month for services the consumers did not use <u>and did not understand that they had purchased;</u>"

7   moreover, this industry "was able to flourish because reputable websites were willing to share

8   their customers' billing information."  (Exhibit 2 at p. 20, "Conclusion")(emphasis supplied).

9       32.     The Committee also determined that companies like CMG were not following

10  credit card processing rules, noting that "the 'data pass' process used by online merchants to

11  enroll consumers in membership clubs appeared to violate both the generally-accepted norms of

12  online commerce and the credit card companies' rules for online transactions."  (Exh. 2 at 2.)

13  Both MasterCard and Visa acknowledged that the data pass method violated a number of their

14  general rules for merchants or their specific rules for card-not present transactions.

15      33.     As a result of the Senate Investigation, on December 29, 2010, the President

16  signed the Restore Online Shoppers' Confidence Act ("ROSCA").  ROSCA outlaws the "data

17  pass" process.  Most significantly, ROSCA requires companies like CMG to obtain "the full

18  account number of the account to be charged; and the consumer's name and address and a means

19  to contact the consumer."

20  **V.    PLAINTIFFS' CLASS ACTION ALLEGATIONS**

21      34.     **The Class**. This lawsuit is brought on behalf of an ascertainable nationwide Class

22  consisting of:

23          All persons residing in the United States who had their credit or debit card
            charged, or bank account debited, for fees associated with any membership
24          program maintained by Clarus Marketing Group, including
            FreeShipping.com Insiders-Club, Internet Insiders-Club, Movie Ticket
25          Discounts, Insiders Coupons, at any time from four years preceding the
            filing of this case until present. ("Class")
26

27      35.     **The Debit Card Subclass.**   This lawsuit is also brought on behalf of an

    ascertainable nationwide subclass consisting of:
28

            All Class members whose debit cards or bank accounts were charged.

36. **The Michigan Subclass.** This lawsuit is also brought on behalf of an ascertainable nationwide subclass consisting of:

> All Class members that were residents of the State of Michigan at the time that they were enrolled in any CMG membership program and/or had their credit or debit card charged, or bank account debited.

37. **Excluded from Class and Subclasses**: Excluded from the Class and Subclasses are Defendants, their corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities, and Plaintiffs' attorneys. Also excluded from the Class and Subclasses are any judges presiding over these proceedings and their immediate family.

38. **Numerosity**: The members of the Class and Subclasses members are so numerous that joinder of all members is impracticable. While the exact numbers are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Class and each Subclass consists of thousands of individuals. Class members are readily ascertainable through appropriate discovery from records maintained by Defendants and their agents.

39. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable, the likelihood of individual Class members prosecuting separate claims is remote and individual members do not have a significant interest in individually controlling the prosecution of separate actions. No difficulty will be encountered in this case's management to preclude maintenance as a class action.

40. **Common Questions of Law and Fact Predominate**: Questions of law and fact common to the Class predominate over questions affecting only individuals. Among the common questions are:

a. whether Class members can lawfully authorize an online retailer like Provide-Commerce to transfer their credit card or debit card information to CMG merely by providing their email address and zip code on an internet form;

b. whether Class members can lawfully authorize CMG to bill their credit cards

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

1    merely by providing their email address and zip code;

2          c.    whether Defendants' conduct violates the rules and terms of use established by

3    credit card companies such as MasterCard, Visa, and American Express;

4          d.    whether Class members can lawfully authorize CMG to charge their debit and

5    credit cards merely by providing their email address and zip code;

6          e.    whether an email address and/or zip code on a web page constitutes a "written

7    authorization" under the Electronic Funds Transfer Act ("EFTA");

8          f.    whether CMG provided Debit Card Subclass members with a copy of their

9    purported written authorization to begin charging their debit cards, as required by the EFTA.

10         g.    whether Class members were enrolled in CMG's membership programs;

11         h.    whether Class members' billing information was obtained by CMG without

12   consent;

13         i.    whether CMG "intercepted" Class members' billing information;

14         j.    whether CMG charged Plaintiffs' and the Class members' credit or debit cards

15   without consent;

16         k.    whether Defendants violated RICO;

17         l.    whether Defendants engaged in conversion;

18         m.    whether Defendants obtained unjust enrichment;

19         n.    whether Defendants violated privacy rights;

20         o.    whether Defendants engaged in negligence or unfair or unlawful business

21   practices;

22         p.    whether Defendants' contracts, agreements, or policies contained unconscionable

23   terms;

24         q.    whether CMG violated the EFTA;

25         r.    whether Plaintiffs and the Class are entitled to restitution;

26         s.    whether Plaintiffs and the Class are entitled to declaratory relief;

27         t.    whether Plaintiffs and the Class are entitled to injunctive relief; and

28         u.    whether Plaintiffs and the Class sustained damages and, if so, the proper measure

of those damages.

41. **Typicality**: Plaintiffs' claims are typical of other Class members' claims because they, like every other Class member, were exposed to virtually identical conduct.

42. **Adequacy**: Plaintiffs can fairly and adequately represent the Class' interests; they have no conflicts of interest with other Class members, and they retained counsel competent and experienced in class action and complex civil litigation.

## VI. <u>CLAIMS FOR RELIEF</u>

**FIRST CLAIM**
**Violations of RICO**
**Brought by Plaintiffs and the Class Against CMG**

43. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

44. The Racketeering Influenced and Corrupt Organizations Act ("RICO") provides:

> It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c).

45. CMG is at all times relevant to this action, a RICO "person" within the meaning of 18 U.S.C. § 1961(3) and § 1962(c), and employs or associates with an enterprise operated or managed through a pattern of racketeering activity that injured Plaintiffs' and the Class members' property.

### RICO Enterprise

46. Freeshipping.com, like all other membership programs operated by CMG, is an enterprise engaged in activities that affect every state within the United States. Alternatively, CMG, Provide-Commerce, and Freeshipping.com are an association-in-fact "enterprise," within the meaning of 18 U.S.C. § 1961(4), and engaged in activities that affect every state within the United States.

47. The enterprise's purpose is to profit from making unauthorized charges to consumers' credit and debit cards under the guise that consumers authorized their enrollment in

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

Freeshipping.com, a membership program with monthly fees.

48.     CMG's role in the enterprise is (a) to create, implement, and operate Freeshipping.com; (b) to promote Freeshipping.com on Provide-Commerce's various retail websites via the free shipping on next purchase coupon; (c) to re-direct consumers attempting to retrieve the free shipping on next purchase coupon to another webpage that requests consumers' to provide innocuous information such as an email address and zip code to create a pretext to charge their debit and credit cards; (d) to obtain consumers' Private Payment Information via the data pass method; (e) to communicate to financial institutions or payment centers that Freeshipping.com obtained authorization to charge consumers' credit and debit accounts; and (f) to share the profits from the unauthorized charges with Provide-Commerce.

49.     The enterprise has remained in existence long enough for CMG to pursue and accomplish the enterprise's purpose: to profit from unauthorized charges to consumers' credit and debit cards.

### Enterprise's Operation or Management

50.     CMG operates and manages the enterprise.

### The Pattern

51.     CMG engages in a related pattern of unlawful activity because, among other things, (a) CMG's purpose is to defraud consumers by charging their credit and debit cards, without proper authorization, under the guise that consumers enrolled in the Freeshipping.com membership program; (b) CMG obtains consumers' Private Payment Information via data pass; (c) CMG communicates to financial institutions that Freeshipping.com has authority to charge consumers' credit and debit cards; (d) CMG shares its profits from the unauthorized charges with Provide-Commerce; (e) consumers suffer unauthorized charges to their credit and debit cards; (f) the victims are always online shoppers; (g) CMG always uses the same the type of coupon or savings offer to entice consumers to provide innocuous information, like their email address and zip code, and then use the provision of that information as a pretext to engage in data pass and unauthorized charges to credit and debit cards; and (h) CMG continues to charge consumer's credit and debit cards using Private Payment Information obtained via data pass and to share

those profits with Provide-Commerce. CMG engaged in those activities for at least a four-year period and will continue to charge consumers' credit and debit cards using information obtained via data pass indefinitely.

**Racketeering Activity**

52. CMG engaged in racketeering activity via mail and wire fraud within the meaning of 18 U.S.C. §§ 1341, 1343, by using the internet and U.S. mail to advance its scheme to profit from unauthorized charges to consumers' credit and debit cards. CMG used the internet and U.S. mail to misrepresent to consumers the true nature of the free shipping coupon and to misrepresent to financial institutions that Freeshipping.com was authorized to charge consumers' credit and debit cards.

53. CMG further engaged in racketeering activity via financial institution fraud within the meaning of 18 U.S.C. § 1344, by knowingly executing a scheme to obtain moneys from consumers' bank accounts misrepresenting by omission to financial institutions that it had obtained authorization to charge consumers' credit and debit cards and by using Private Payment Information obtained from data pass under the pretext that consumers knowingly agreed to join and pay monthly membership fees for Freeshipping.com.

54. Plaintiffs and the Class members were injured from the unauthorized charges to their credit and debit cards, and thus suffered damages, including lost interest and use of their money. Plaintiffs and the Class are entitled to treble damages and attorneys' fees and costs under 18 U.S.C. § 1964(c).

**SECOND CLAIM**
**Violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 _et seq._**
**Brought by Plaintiffs Cox and Lynch and the Debit Card Subclass Against CMG**

55. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

56. The Electronic Funds Transfer Act or EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. § 1693. The primary objective of the EFTA "is the provision of

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

individual consumer rights." *Id.*

57. Plaintiffs Cox and Lynch and the Debit Card Subclass members each maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2), and are "consumers" as that term is defined in 15 U.S.C. § 1693a(5).

58. CMG engaged in "unauthorized electronic funds transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting the bank accounts of Plaintiffs Cox and Lynch and the Debit Card Subclass members without express authorization.

59. The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). "In case of preauthorized transfers from a consumer's account to the same person which may vary in amount…the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

60. The EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq.,* provide: "Preauthorization electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.1(d). According to the Official Staff Interpretations ("OSI") of Regulation E, the EFTA's requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot be met by a payee's signing a written authorization on the consumer's behalf with only an oral authorization from the consumer." Regulation E, Supp. I, Part 10(b), ¶ 3. When "a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer…it is the third-party payee that is in violation of the regulation." *Id.* at ¶ 2.

61. CMG violated the EFTA because it initiated electronic fund transfers from Plaintiffs Cox and Lynch's accounts, as well as the Debit Card Subclass members' accounts, without obtaining prior written authorization. Neither an email address, nor a zip code constitutes a "written authorization" or a "writing signed or similarly authenticated" for purposes

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

62.     CMG also violated the EFTA because it initiated electronic fund transfers from Plaintiffs Cox and Lynch's accounts, as well as the Debit Card Subclass members' accounts, without providing copies of their written authorizations or reasonable advance notice of the amount to be transferred and the scheduled date of the transfer.  On information and belief, CMG does not even obtain or keep a copy of the completed forms bearing Plaintiffs Cox and Lynch's and the Debit Card Subclass members' supposed written authorizations.  And CMG certainly did not provide these plaintiffs and the Debit Card Subclass members with copies of these completed forms.

63.     Under 15 U.S.C. § 1693m, Plaintiffs Cox and Lynch and the Debit Card Subclass members seek damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.

### THIRD CLAIM
### Declaratory Relief
### Brought by Plaintiffs and the Class Against CMG

64.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

65.     According to Defendants, Plaintiffs and the Class members are parties to a putative contract with CMG, the object of which is to allow CMG to charge Plaintiffs' and the Class members' debit and credit accounts using Private Payment Information obtained via the data pass method under the premise that Plaintiffs and the Class members enrolled in membership programs, such as FreeShipping.com.  The putative contract allows CMG to circumvent its obligation to assure that consumers are knowingly, willingly, and affirmatively agreeing to join a membership program, pay monthly service fees, and have their credit or debit cards charged.

66.     The putative contract was never formed because there was no meeting of the minds between the parties.  Even if a contract was formed, which it was not, it is unconscionable, misleading, confusing and one-sided.  Among other things, the Senate Committee determined

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

that obtaining consumers' Private Payment Information without requiring consumers to re-enter it, deprives consumers of notice that they are entering a new, ongoing financial relationship with an unfamiliar company, like CMG. Further, consumers do not receive meaningful benefits in exchange for being enrolled in a membership program and charged monthly fees. Consumers are told that they will receive free shipping benefits, yet terms regarding charges to their accounts were hidden and disguised on prolix forms. Consumers essentially are not given any meaningful choice as to whether to enroll, as evidenced by the fact that they unknowingly enrolled in the program. Further, the putative contract violates ROSCA because CMG did not obtain, directly from consumers, "the full account number of the account to be charged; and the consumer's name and address and a means to contact the consumer" before charging their credit and debit accounts. Further, the putative contract violates credit card companies' policies and procedures against using the data pass method.

67. Plaintiffs seek a declaratory judgment that this contract is void on the ground that it is unconscionable because, in part, the contract purports to allow CMG to enroll consumers in membership programs and then charge consumers' debit and credit accounts for monthly fees using Private Payment Information obtained via the data pass method and without obtaining express authorization.

68. An actual and present controversy exists between the parties because CMG continues to use the putative contracts as a means to continue to make unauthorized charges to consumers' credit and debit accounts. As such, Plaintiffs and the Class seek both a declaration that these putative contract terms are unconscionable, illegal, and void, and restitution under 28 U.S.C. §§ 2201 and 2202 and all other applicable statutes.

**FOURTH CLAIM**
**Conversion**
**Brought by Plaintiffs and the Class Against Defendants**

69. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

70. Plaintiffs and the Class members had a right to retain the moneys taken from their credit and debit card accounts when they were secretly enrolled in CMG's Insiders-Club without

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

authorization. Plaintiffs and the Class members also have a right of ownership and possession of their private, personally identifying information including their credit card, debit card and all other billing information. Plaintiffs and the Class members further have a right of ownership and possession of their private computer systems.

71. CMG unlawfully converted Plaintiffs' and the Class members' funds, personally identifying information (including but not limited to their billing information) and private computer systems through its deceptive practices which surreptitiously enrolled Plaintiffs and the Class members into its paid membership clubs without their authorization.

72. Provide-Commerce unlawfully converted Plaintiffs' and the Class members' personally identifying information (including but not limited to their billing information) and private computer systems to which they received access for the limited purposes of purchasing flowers, but which were used for the additional unauthorized purposes described herein.

73. Defendants explicitly or implicitly made false representations and statements of existing facts with the intent to deceive Plaintiffs and the Class members by concealing or omitting the following material facts: (a) while completing a transaction with Provide-Commerce, CMG, with knowing assistance from Provide-Commerce, would be granted and gain access to Plaintiffs' and the Class members' confidential billing information by means of a deceptive offer that was made to Plaintiffs and the Class members; (b) CMG would automatically charge Plaintiffs and the Class members a monthly fee for CMG's membership programs, including FreeShipping.com Insiders-Club; and (c) Provide-Commerce and CMG profit from Plaintiffs' and the Class members' deceptive enrollment in CMG's membership programs.

74. As a result of Defendants' conversion, Plaintiffs and the Class members were damaged because, among other things, their credit and debit card accounts were charged unauthorized fees approximating $9.00 to $20.00 per month. In addition, Plaintiffs and the Class members were damaged because their private computer systems were used to disseminate their personally identifying information (including but not limited to their billing information) to unauthorized third parties, who then imposed unauthorized charges on Plaintiffs and the Class

members.

75.     Defendants' silence and omissions as to the material facts outlined above were material insofar as their silence and omissions caused Plaintiffs and the Class members, without their knowledge, to become secretly enrolled in CMG's paid membership clubs without authorization.

76.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants for damages arising from their misconduct, along with prejudgment interest, costs of suit and such other relief this Court deems proper.  Because Defendants' actions and omissions were willful, wanton, malicious and oppressive, and were undertaken with the intent to defraud, Plaintiffs further demand an award of exemplary and punitive damages.

## FIFTH CLAIM
### Negligence
**Brought by Plaintiffs and the Class Against Defendants**

77.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

78.     Provide-Commerce owed a duty of care to Plaintiffs and the Class members to reasonably protect their Private Payment Information, and to adequately inform them of the use of that information for purposes other than the one for which they were visiting Provide-Commerce's website.  And CMG owed a duty of care and honesty to Plaintiffs and the Class members to ensure that it was not obtaining and using their Private Payment Information under misleading circumstances.

79.     Defendants assisted each other in breaching their respective duties.  Among other things, Provide-Commerce negligently shared Plaintiffs' and the Class members' Private Payment Information with CMG without informed authorization.  And CMG negligently obtained and charged Plaintiffs' and the Class members' credit and debit cards without proper authorization and in violation of ROSCA and credit card company policies and procedures against using the data pass process.

80.     Defendants negligently utilized webpages and advertising that Defendants knew or reasonably should have known, were confusing and misleading in format and substance.

81. Defendants also knew, or reasonably should have known, that Plaintiffs and the Class members did not want their Private Payment Information passed to CMG; that they did not want to enroll in CMG's membership programs; and that they did not want CMG to charge their credit and debit cards.

82. But for Defendants' negligence, Plaintiffs and the Class members would not have unauthorized charges on their credit and debit card bills, for a service that was never requested, used, or provided.

83. CMG had no lawful or legitimate basis to access and charge Plaintiffs' and the Class members' credit and debit cards for fees associated with its membership programs, like FreeShipping.com Insiders-Club.

84. Defendants received, and continue to receive, substantial fees from CMG's charging of Plaintiffs' and the Class members' credit and debit card accounts.

85. Plaintiffs and the Class members have been damaged by Defendants' negligent conduct in an amount to be proven at trial.

## SIXTH CLAIM
**Invasion of Constitutionally Protected Right to Privacy Under the California Constitution Brought by Plaintiffs and the Class Against Defendants**

86. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

87. Plaintiffs and the Class have constitutionally protected privacy interests in their Private Payment Information and their ability to control the disclosure and dissemination of this information.

88. Plaintiffs and the Class had reasonable expectations that their Private Payment Information would remain private from CMG when they entered into credit or debit card transactions with Provide-Commerce. They were certainly not aware that Provide-Commerce would disclose to CMG, or allow CMG to obtain, this information. Provide-Commerce did not disclose its intentions to provide Plaintiffs' and the Class members' Private Payment Information to CMG. Provide-Commerce relied on the fact that Plaintiffs and the Class members did not know it would disclose their Private Payment Information to CMG, and, instead, believed that

Provide-Commerce would only use their Private Payment Information to process their purchase from a Provide-Commerce website.

89. Plaintiffs and the Class had reasonable expectations that CMG – albeit an unknown entity to them at the time – would not obtain their Private Payment Information from Provide-Commerce and use it without ensuring that it had Plaintiffs' and the Class members' express consent. They were certainly not aware that Provide-Commerce would disclose to CMG, or allow CMG to obtain, this information without consent. Neither CMG, nor Provide-Commerce, disclosed its true intention in a meaningful manner that would give Plaintiffs and the Class members sufficient awareness about how their Private Payment Information would be handled.

90. Defendants did not obtain Plaintiffs' or the Class' Private Payment Information from a public source. Defendants realize that customers are eager to maintain their privacy rights in their Private Payment Information.

91. As a proximate result of Defendants' above acts, Plaintiffs' and the Class' Private Payment Information was compromised and was obtained and used by CMG for profit without their knowledge or consent, and all to the general damage in an amount according to proof.

92. Defendants are guilty of oppression, fraud, or malice by using Private Payment Information with a willful and conscious disregard of Plaintiffs' and the Class' privacy rights.

93. Plaintiffs and the Class seek judgment for actual and punitive damages, plus attorneys' fees for the establishment of a common fund, interest, and costs. They also seek injunctive relief. Unless and until enjoined, and restrained by court order, Defendants will continue to cause Plaintiffs, the Class, and the public great and irreparable injury in that Private Payment Information maintained by Provide-Commerce will be disclosed for profit and that CMG will make unauthorized charges to the credit and debit card accounts. Plaintiffs, the Class, and the general public have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy.

/ / /

/ / /

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

**SEVENTH CLAIM**
**Invasion of Privacy**
**Brought by Plaintiffs and the Class Against Defendants**

94.     Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

95.     One who intentionally obtains unwanted access to another's private data is liable for invasion of privacy in tort. *Taus v. Loftus,* 40 Cal.4th 683, 725, 54 Cal. Rptr. 3d 775, 807-08 (2007). The Supreme Court of California instructs that the tort of intrusion is not limited to physical invasions, but also lies where the defendant "obtained unwanted access to data about the plaintiff." *Taus*, 40 Cal.4th at 725, 54 Cal. Rptr. 3d at 807-08 (2007) (quoting *Shulman v. Group W Productions, Inc.,* 18 Cal.4th 200 (1998).

96.     Plaintiffs and the Class had reasonable expectations that their Private Payment Information would remain private from CMG when they entered into credit or debit card transactions with Provide-Commerce. They were certainly not aware that Provide-Commerce would disclose to CMG, or allow CMG to obtain, this information. Provide-Commerce did not disclose its intentions to provide Plaintiffs' and the Class' Private Payment Information to CMG, but instead assured Plaintiffs and the Class that their Private Payment Information would not be shared with any third parties — unless necessary to process an order — absent informed consent. But Provide-Commerce passed this information on to CMG without obtaining informed consent.

97.     The manner in which Defendants invaded Plaintiffs' and the Class' privacy rights is highly offensive to a reasonable person, as evidenced by the thousands of consumer complaints regarding Defendants' practices.

98.     Provide-Commerce relied on the fact that Plaintiffs and the Class did not know it would disclose their Private Payment Information to CMG, and, instead, believed that Provide-Commerce would only use their Private Payment Information to process their purchase from a Provide-Commerce website.

99.     Defendants' actions constitute a "serious" invasion of privacy resulting in Plaintiffs and the Class being charged millions of dollars in unauthorized charges and having their Private Payment Information disclosed to or obtained by CMG without their authorization

or consent.

100.    Defendants' conduct is highly offensive to a reasonable person, as evidenced by the thousands of consumer complaints regarding Defendants' practices.

101.    Defendants realize that customers protect their privacy rights in their Private Payment Information.

102.    As a proximate result of Defendants' above acts, Plaintiffs' and the Class' Private Payment Information was compromised and was obtained and used by CMG for profit without their knowledge or consent, and all to the general damage in an amount according to proof.

103.    Defendants are guilty of oppression, fraud, or malice by using Private Payment Information with a willful and conscious disregard of Plaintiffs' and the Class' privacy rights.

104.    Plaintiffs and the Class seek judgment for actual and punitive damages, plus attorneys' fees for the establishment of a common fund, interest, and costs.   They also seek injunctive relief.   Unless and until enjoined, and restrained by court order, Defendants will continue to cause Plaintiffs, the Class, and the public great and irreparable injury in that Private Payment Information maintained by Provide-Commerce will be disclosed for profit and that CMG will make unauthorized charges to the credit and debit card accounts.  Plaintiffs, the Class, and the general public have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy.

## EIGHTH CLAIM
### California Consumers Legal Remedies Act
### Brought by Plaintiffs and the Class Against All Defendants

105.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

106.    At all times relevant herein, Plaintiffs were "consumers" within the meaning of California Civil Code § 1761(d).

107.    Defendants violated Civil Code § 1770(a)(2) by misrepresenting the source of the free shipping offer.

108.    Defendants violated Civil Code § 1770(a)(3) by misrepresenting their association with each other.

109.    Defendants violated Civil Code § 1770(a)(5) by misrepresenting that consumers would receive free shipping benefits when, in fact, they had to pay for those benefits.

110.    Defendants violated Civil Code § 1770(a)(9) by advertising free shipping benefits with the intent to make unauthorized charges to consumers' credit and debit cards.

111.    Defendants violated Civil Code § 1770(a)(13) by making or assisting each other in making false or misleading statements about the free shipping offer or other discount offers.

112.    Defendants violated Civil Code § 1770(a)(14) by representing or assisting each other in representing that the transaction would confer rights and remedies, which the transaction did not have, including offering free shipping benefits.

113.    Defendants violated Civil Code § 1770(a)(17) by representing that consumers would receive free shipping benefits when the earning of the free shipping benefit, if any, was contingent on enrolling in a membership program and paying monthly fees.

114.    Defendants violated California Civil Code § 1770(a)(19) by inserting unconscionable provisions in purported electronic contracts that seek to bind consumers to terms to which they did not agree.

115.    Plaintiffs and the Class suffered harm because they incurred charges and/or paid monies in monthly membership fees associated with the "Free Shipping" offers.

116.    More than 30 days prior to the filing of this Complaint, Plaintiffs sent CLRA notice letters to Defendants in compliance with California Civil Code § 1782(a).

117.    Thus, Plaintiffs and the Class seek injunctive relief, restitution and monetary damages against Defendants.

## NINTH CLAIM
### Unlawful, Unfair and Fraudulent Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.
### Brought by Plaintiffs and the Class Against Defendants

118.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

119.    The Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL") defines unfair competition to include any unfair, unlawful or fraudulent business act or

practice.

120.    Defendants' acts and practices are unlawful because they violate various statutes and laws as set forth above.

121.    Defendants' acts and practices are fraudulent because they falsely and misleadingly lead consumers to believe that they are redeeming a coupon for free shipping, when they are unwittingly being enrolled in CMG's program without their authorization and thereafter subject to unauthorized monthly charges.

122.    Defendants' acts and practices also are unfair because the injury to Plaintiffs and the Class greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances and because, among other things, it violates the credit card companies' standard operating procedures and generally accepted business practices.

123.    Defendants continue to engage in unlawful and unfair business practices and have been unjustly enriched.

124.    To the extent Defendants' websites and savings offers contained terms that permitted their conduct, those terms are unconscionable and thus unenforceable.

125.    As a direct and proximate cause of Defendants' conduct, Plaintiffs and the Class suffered, among other things, misappropriation of their Private Payment Information and unauthorized charges to their credit and debit cards.

126.    Defendants' business practices present a continuing threat to Plaintiffs, the Class and the general public because, among other things, they continue to wrongfully obtain and mishandle the Class members' Private Payment Information, and continue to charge their credit and debit cards without proper authorization.

127.    Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law.  Absent equitable relief, Defendants will likely continue to injure consumers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings.  Additionally, Plaintiffs and the Class seek judgment against Defendants for preliminary and permanent injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the conduct alleged herein, along with interest, attorneys' fees and

costs under Cal. Code Civ. Proc. § 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Defendants to pay attorneys' fees and litigation expenses.

**TENTH CLAIM**
**Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, et seq.**
**Brought by Plaintiffs and the Class Against Defendants**

128. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

129. ROSCA bans the "data pass" process by prohibiting initial merchants from disclosing a credit card, debit card, bank account, or other financial account number, or other billing information that is used to charge a customer, to any post-transaction third party seller for use in an Internet-based sale of any goods or services.

130. ROSCA also requires post transaction third party sellers to fully disclose the goods and services being offered and their costs, and severely restricts use of the "negative option" feature. Most significantly, before post transaction third party sellers can charge consumers' debit and credit cards, ROSCA requires them to receive express informed consent. Post transaction third party sellers are required to obtain from consumers their full account number, name, address, and contact information. They also must require consumers to perform an additional affirmative action that shows consent.

131. Provide-Commerce is an initial merchant as defined under ROSCA because it obtained Plaintiffs' and the Class' billing information directly from Plaintiffs and the Class when they were in the process of purchasing merchandise from a Provide-Commerce website.

132. CMG is a post-transaction third party seller as defined under ROSCA because it sells access to membership clubs on the Internet, it solicits this service on the Internet through a Provide-Commerce website, after Plaintiffs and the Class initiated a transaction on the Provide-Commerce website. CMG is not the initial merchant, a subsidiary or corporate affiliate of the initial merchant or a successor of those entities.

133. Defendants' acts and practices are unlawful and unfair because, among other things, CMG charges, with Provide-Commerce's assistance, consumers' credit and debit cards without obtaining express informed consent as required under ROSCA. Instead it charges the

cards using information obtained through the data pass process.

134. Defendants continue to engage in these unlawful and unfair business practices and have been unjustly enriched.

135. As a direct and proximate cause of Defendants' conduct, Plaintiffs and the Class suffered unauthorized charges to their credit and debit cards.

136. Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law. Absent equitable relief, Defendants will continue to injure consumers, reap unjust enrichment, and harm the public's interest, thus engendering a multiplicity of judicial proceedings. Additionally, Plaintiffs and the Class seek judgment against Defendants for preliminary and permanent injunctive relief, restitution, and/or proportional disgorgement of profits earned as a result of the conduct alleged herein, along with interest, attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5, the substantial benefit doctrine, the common fund doctrine or other authority requiring Defendants to pay attorneys' fees and litigation expenses.

## ELEVENTH CLAIM
### Violation of Connecticut Unfair Trade Practices Act
### Brought by Plaintiffs and the Class Against CMG

137. Plaintiffs refer to and incorporate by reference the above paragraphs as though set forth fully herein.

138. The Connecticut Unfair Trade Practices Act ("CUTPA") was enacted to prohibit, and protect persons from deceptive, fraudulent and unfair conduct.

139. CMG's acts and practices are unlawful and unfair because, among other things, it charges Plaintiffs and the Class members' credit and debit cards without obtaining express informed consent as required under ROSCA. Instead CMG charges Plaintiffs and the Class members' credit and debit cards using Private Payment Information obtained through the data pass process.

140. As alleged above, Defendants' conduct violates ROSCA, which is expressly treated as a violation of the Federal Trade Commission Act regarding unfair or deceptive acts or practices.

141. CMG's conduct offends public policy and is immoral, unethical, oppressive or

1    unscrupulous.

2        142.    CMG's conduct also caused Plaintiffs and the Class members' substantial and

3    ascertainable monetary loss.  Their injury is not outweighed by any countervailing benefits to

4    consumers or competition that the practice produces; and could not reasonably have been

5    avoided.

6        143.    Plaintiffs and the Class seek judgment against CMG for preliminary and

7    permanent injunctive relief, restitution, and/or proportional disgorgement of profits earned as a

8    result of the conduct alleged herein, along with interest, punitive damages, and attorneys' fees

9    and costs.

10                                        **TWELTH CLAIM**
                            **Violation of Michigan Compiled Laws § 600.2919a**
11            **Brought by Plaintiff Lynch and the Michigan Subclass Against Defendants**

12        144.    Plaintiffs refer to and incorporate by reference the above paragraphs as though set

13    forth fully herein.

14        145.    Under MCL 600.2919a(1)(a), a person damaged as a result of another person's

15    stealing or embezzling property or converting property to the other person's own use may

16    recover three times the amount of actual damages.

17        146.    As alleged above, Defendants stole money from Plaintiff Lynch and the

18    Michigan Subclass by, among other things, misusing their Private Payment Information to make

19    unauthorized charges to their credit and debit card accounts.

20        147.    CMG's conduct caused Plaintiff Lynch and the Michigan Subclass substantial and

21    ascertainable money loss.

22        148.    Plaintiff Lynch and the Michigan Subclass seek judgment against CMG in the

23    amount of three times the actual damages, along with interest, and attorneys' fees and costs.

24    **VII.    PRAYER FOR RELIEF**

25        Plaintiffs, the Class, and the Subclasses pray for judgment against Defendants as follows:

26        A.    An order certifying the Class and Subclasses and designating Plaintiffs as the

27            Class Representatives and Plaintiffs' counsel as Class Counsel;

28        B.    That the Court preliminarily and permanently enjoins Defendants from engaging

1     in the conduct alleged herein;

2     C.    Other injunctive and declaratory relief as may be appropriate;

3     D.    Restitution and disgorgement of any ill-gotten profits from Defendants to the

4     extent permitted by applicable law, together with interest thereon from the date of

5     payment;

6     E.    For statutory damages according to proof;

7     F.    For general damages according to proof;

8     G.    For special damages according to proof;

9     H.    For exemplary or punitive damages;

10    I.    A declaration that Defendants are financially responsible for notifying the Class

11    about the pendency of this action;

12    J.    Reasonable costs and attorneys' fees;

13    K.    Statutory pre-judgment interest; and

14    L.    For such other relief as the Court may deem proper.

15                **DEMAND FOR JURY TRIAL**

16     Plaintiffs, on behalf of themselves and the Class, demand a jury trial for all of the claims

17 so triable.

18

19 Dated: November 18, 2011        **PATTERSON LAW GROUP APC**

20

21                        By:        /s/ James R. Patterson

22                             James R. Patterson

23                             Alisa A. Martin
                            Attorneys for Plaintiffs and the Class

24                        **BARON & BUDD, P.C.**

25                        Bruce W. Steckler (pro hac vice pending)
                       Mazin A. Sbaiti, State Bar No. 275089

26                        3102 Oak Lawn Avenue, Suite 1100
                       Dallas, Texas 75219

27                        Telephone: (214) 521-3605
                       Facsimile: (214) 520-1181

28                        bstecker@baronbudd.com
                       msbaiti@BaronBudd.com

**FARUQI & FARUQI, LLP**
Vahn Alexander, State Bar No. 167373
1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA 90067
Telephone: (310) 461-1426
Facsimile: (310) 461-1427
valexander@faruqilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher, State Bar No. 191626
1990 North California Blvd, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor, State Bar No. 276006
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 989-9113
Facsimile:  (212) 989-9163
scott@bursor.com

*Attorneys for Plaintiffs & the Class*

PATTERSON LAW GROUP APC
402 West Broadway
29TH Floor
San Diego, CA 92101

CLASS ACTION COMPLAINT

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DANIEL COX, JOSEPH M. LYNCH, and NICOLE HALL, on behalf of themselves and all others similarly situated

## DEFENDANTS

CLARUS MARKETING GROUP, LLC., a Connecticut corporation; PROVIDE-COMMERCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive

**(b)** County of Residence of First Listed Plaintiff <u>Livingston</u>
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
James R. Patterson, Esq./Alisa A. Martin, Esq.
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Tel: 619-398-4760 / Fax: 619-756-6991

Attorneys (If Known)

'11CV2711 L    RBB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☐ 2 | U.S. Government Defendant | |
| ☒ 3 | Federal Question (U.S. Government Not a Party) | |
| ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 y¬2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 yeb |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1331, 15 U.S.C. § 1693(m)(g)(EFTA), 18 U.S.C. § 2510, 28 U.S.C. § 1367; 28 U.S.C. § 1391(c)

Brief description of cause:
Unfair business practices

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $IN EXCESS OF 5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE
November 18, 2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ James R. Patterson

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:          U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com