James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

*Plaintiffs' Co-Counsel and Proposed Class Counsel*

*[Additional Counsel Listed On Signature Page]*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COX, JOSEPH M. LYNCH, and NICOLE HALL, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>CLARUS MARKETING GROUP, LLC, a Connecticut corporation; PROVIDE COMMERCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO.: 11-CV-02711-H (RBB)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (2) PROVISIONAL CLASS CERTIFICATION, (3) DISTRIBUTION OF CLASS NOTICE, AND (4) SCHEDULING OF FAIRNESS HEARING**<br><br>Date: November 13, 2012<br>Time: 10:30 a.m.<br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 13 |

# TABLE OF CONTENTS

I.   INTRODUCTION....................................................................................................... 1

II.  STATEMENT OF THE FACTS ............................................................................... 2

   A.  Plaintiffs' Allegations........................................................................................ 2

   B.  Relevant Procedural History.............................................................................. 4

   C.  Plaintiffs' Discovery Efforts............................................................................. 5

   D.  Mediation and Settlement Negotiations. .......................................................... 6

III. THE SETTLEMENT TERMS .................................................................................. 7

   A.  The Settlement Class and Subclass. .................................................................. 7

   B.  Relief to the Class and Subclass. ...................................................................... 8

   C.  Class Representatives' Incentive Payments. ..................................................... 9

   D.  Attorneys' Fees and Costs. ............................................................................. 10

   E.  Settlement Administration and Notice. ........................................................... 10

   F.  Objections and Opt-Out Procedures. .............................................................. 11

IV.  ANALYSIS ............................................................................................................. 12

   A.  The Law Favors Settlement............................................................................. 12

   B.  The Preliminary Approval Process.................................................................. 13

C. The Settlement Should Be Preliminarily Approved. ........................................ 14

    1. The Settlement Enjoys a Presumption of Fairness Because the Negotiations Were Conducted at Arm's Length. ...................................................................... 14

    2. Counsel's Discovery Efforts. ..................................................................... 15

    3. The Settlement Suffers From No Obvious Deficiencies. ............................. 15

    4. The Incentive Awards Are Reasonable. ..................................................... 15

    5. The Attorneys' Fees And Costs Are Reasonable. ....................................... 16

    6. The Proponents of the Settlement Are Experienced in Similar Litigation. ................. 18

    7. The Proposed Settlement Class Warrants Certification. .............................. 18

D. The Proposed Form And Method Of Class Notice Satisfies Due Process. ..................... 22

V. CONCLUSION ............................................................................................. 23

CASES

*Alberto v. GMRI, Inc.*
  252 F.R.D. 652 (E.D. Cal. 2008) ................................................................. 12

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997) ....................................................................... 12, 18

*Baxter v. Intelius*
  No. 09-1031 SACV-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ................ 2

*Berry v. Webloyalty.com, Inc.*
  No. 10-CV-1358-H (CAB), 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) ..................... 2

*Bott v. Vistaprint USA, Inc.*
  392 Fed. Appx. 327 (5th Cir. Tex. 2010) ............................................... 2

*Browning v. Yahoo! Inc.*
  No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ......................... 21

*Fernandez v. Victoria Secret Stores, LLC*
  No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. Jul. 21, 2008) ................. 17

*Ferrington v. McAfee, Inc.*
  No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ........................ 2

*Gautreaux v. Pierce*
  690 F.2d 616 (7th Cir.1982) ........................................................... 12

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*
  446 U.S. 318 (1980) ................................................................... 19

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ................................................. 16, 19, 20

*In re Activision Sec. Litig.*
  723 F. Supp. 1373 (N.D. Cal. 1989) .................................................... 16

*In re EasySaver Rewards Litig.*
  737 F. Supp. 2d 1159 (S.D. Cal. Aug. 13, 2010) ........................................ 2

*In Re HP Laser Printer Litig.*
  No. SACV 07-0667 AG (RNBx), 2011 WL 3861703 (C.D. Cal. Aug 31, 2011) ................. 13

*In re Pac. Enter. Sec. Litig.*
  47 F.3d 373 (9th Cir. 1995) ........................................................... 16

*In re Portal Software, Inc. Sec. Litig.*
  No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. Jun. 30, 2007) ......................... 18

*In re Syncor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  No. 3:07-md-1827 SI, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ................................ 15

*In re VistaPrint Corp. Mktg. and Sales Practices Litig.*
  MDL No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ............................ 2

*In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*
  No. 5:09-md-02015 JF, 2011 WL 1877630 (N.D. Cal. May 17, 2011) .............................. 15

*Jaffe v. Morgan Stanley & Co., Inc.*
  No. C-06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ...................................... 18

*Keithly v. Intelius Inc.*
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) ........................................................................ 2

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
  350 F.3d 1018 (9th Cir. 2003) ........................................................................................ 20

*Lundell v. Dell, Inc.*
  No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ........................ 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ........................... 11, 12

*Rannis v. Recchia*
  380 Fed. Appx. 646 (9th Cir. 2010) ................................................................................ 19

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009) .......................................................................................... 14

*Singer v. Becton Dickinson and Co.*
  08-cv-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ................................ 15

*Williams v. MGM-Pathe Comm'n Co.*
  129 F.3d 1026 (9th Cir. 1997) ........................................................................................ 16

*Young v. Polo Retail, LLC*
  No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ................................ 13

*Young v. Polo Retail, LLC*
  No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .................................. 17

STATUTES

15 U.S.C. § 1693, *et seq.* ............................................................................................... 3

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................... 3

Cal. Civ. Code § 1750, *et seq.* .................................................................. 3

RULES

Fed. R. Civ. P. 23(a) ............................................................. 18, 19, 20

Fed. R. Civ. P. 23(a)(1) ................................................................ 18

Fed. R. Civ. P. 23(a)(2) ................................................................ 19

Fed. R. Civ. P. 23(b) .................................................................. 18

Fed. R. Civ. P. 23(b)(3) ........................................................... 18, 19

Fed. R. Civ. P. 23(c)(2)(B) ............................................................ 20

Fed. R. Civ. P. 23(e)(1) ............................................................... 20

TREATISES

*2 Newberg on Class Actions*, § 11.41 (4th ed. 2002) ................................ 13

*Manual for Complex Litigation, (Fourth)* § 21.632 (2004) ................... 11, 12, 18

*Manual for Complex Litigation*, § 30.44 (2nd ed. 1985) ............................. 13

# I. INTRODUCTION

Plaintiffs and proposed Class Representatives, Daniel Cox, Joseph M. Lynch, and Nicole Hall, and Defendants, Clarus Marketing Group, LLC ("CMG") and Provide Commerce, Inc. have reached an agreement resolving all claims asserted in this action on a class-wide basis.

This motion seeks preliminary approval of a settlement that will provide benefits to the approximately 1.13 million Class members who, from February 16, 2007 to the present, placed an order on a Provide Commerce website and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com (collectively "FreeShipping.com"). With an estimated value of more than *$2.65 million*, the proposed settlement provides meaningful relief to all Class and Subclass members.

Specifically, the Class consists of approximately 1.3 million class members that plaintiffs contend (and Defendants deny) were deceptively enrolled in FreeShipping.com, plus a Subclass of approximately 130,000 additional class members that were enrolled and charged fees by CMG despite the fact that they did not provide CMG with their credit or debit card information (CMG obtained their billing information from Provide Commerce). The settlement requires Defendants to establish a non-reversionary cash fund ("Settlement Fund") of $500,000 from which eligible Subclass members may claim a cash payment of non-reimbursed fees charged by CMG. All Subclass members who do not assert a claim for a cash payment will automatically receive a fully transferable merchandise credit for $15 off online purchases at a number of Provide Commerce websites ("$15 Credit"). All other Class members will automatically receive a fully transferable code for 20% off online purchases.

Each Class member will receive direct notice advising them of their rights under the settlement, including their rights to opt out of the settlement, be heard by the Court, or receive a 20% Off Code or $15 Credit or make a claim from the Settlement Fund, as applicable. This will ensure that Class and Subclass members are fully informed and have ample opportunity to

participate or exclude themselves from the proposed settlement.

Overall, the proposed Settlement Agreement provides a fair resolution of hotly contested claims and novel issues of law on which courts remain divided. Indeed, this case is one of a handful of federal lawsuits challenging the online marketing practice of retailers sharing consumers' billing information, including their debit and credit card numbers and home addresses, for purposes of ongoing "reward club" type memberships.[1]

Plaintiffs and Class Counsel vigorously litigated this case, and the similar *In re EasySaver Rewards* case which has been heavily litigated for more three years. Only after a full-day private mediation before the Hon. Edward A. Infante (Ret.) did they agree to the proposed Settlement Agreement. For these reasons and those set forth in further detail below, the proposed Settlement Agreement is fair and reasonable, serves the best interests of the Class and Subclass members and is worthy of this Court's approval.

The parties seek an order from this Court: (a) preliminarily approving the proposed settlement; (b) provisionally certifying the Class and Subclass and appointing Class Representatives and appointing Class Counsel; (c) approving the proposed notice and authorizing its dissemination; and (d) setting dates and procedures for the fairness hearing, including deadlines for Class and Subclass members to object to or request exclusion from the settlement.

## II.   STATEMENT OF THE FACTS

### A.     Plaintiffs' Allegations.

Plaintiffs' allegations are set forth in the Complaint.[2]   In summary, they allege that

---

[1] *See In re EasySaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010); *Berry v. Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *14 (S.D. Cal. Apr. 11, 2011)*; Keithly v. Intelius Inc*., 764 F. Supp. 2d 1257, 1267-69 (W.D. Wash. 2011); *Ferrington v. McAfee, Inc*., No. 10-CV-01455-LHK, 2010 WL 3910169, at *9-11 (N.D. Cal. Oct. 5, 2010)*; In re VistaPrint Corp. Mktg. and Sales Practices Litig.,* MDL No. 4:08-md-1994, 2009 WL 2884727, at *12 (S.D. Tex. Aug. 31, 2009), *aff'd; Bott v. Vistaprint USA, Inc.¸* 392 Fed. Appx. 327, 327-28 (5th Cir. Tex. 2010); *Baxter v. Intelius*, No. 09-1031 AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16, 2010).

[2] Dkt. No. 1.

Defendants' prior practices of enrolling customers in FreeShipping.com are unfair and unlawful. Specifically, when Class members completed an order on one of Provide Commerce's retail websites, they were presented with a pop-up window offering free shipping on their current order and free shipping rebates on 12 future Provide Commerce orders. Plaintiffs contend that they were never told that they were no longer on the Provide Commerce retail website or that they had been directed to a CMG interface. The Complaint asserts they also were never informed that by accepting the "free" shipping offer, they were supposedly "authorizing" CMG to charge their debit and credit cards monthly fees. To receive the promotion, Subclass members were asked only to enter their zip code and email address and click "Accept" to receive the promotion, while all other Class members were required to enter additional information, including their billing address and credit card information. Plaintiffs contend that as to Subclass members, Provide Commerce transmitted the Subclass members' private payment information to CMG without consent. CMG proceeded to enroll Plaintiffs and Class members in the FreeShipping.com service and charged their credit and debit cards fees approximating $9.00 to $20.00 per month. Plaintiffs challenged Defendants' conduct as violating the Racketeering Influenced and Corrupt Organizations Act ("RICO") (as to CMG only), the Federal Electronic Funds Transfer Act ("EFTA") (as to CMG only), California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, Connecticut Unfair Trade Practices Act ("CUTPA") (as to CMG only), and Michigan Compiled Laws § 600.2919a, alleged that the conduct constituted conversion, negligence, invasion of privacy, and invasion of privacy under the California Constitution, and sought declaratory relief (as to CMG only).

Defendants deny Plaintiffs' allegations, contending that the FreeShipping.com program details were adequately disclosed and that Plaintiffs entered into electronic contracts with CMG for membership in FreeShipping.com. Defendants contend that Class members had to provide CMG with, among other things, their billing address and payment details, which demonstrates

1    that they authorized the charges. As to Subclass members, Defendants contend that the

2    electronic contracts expressly authorized CMG to obtain Subclass members' billing and

3    payment information from Provide Commerce.

4         **B.**      **Relevant Procedural History.**

5         On February 16, 2011, Plaintiff Daniel Cox and then-plaintiff Bradley Berentson

6    commenced a civil action in the United States District Court for the Northern District of

7    California entitled *Daniel Cox, et al. v. Clarus Marketing Group, LLC, et al.*, Case No. 11-cv-

8    0729-DMR. On March 24, 2011, the case was reassigned to the Honorable Saundra Brown

9    Armstrong.

10        On March 29, 2011, then-plaintiffs Mark McKnight and James Wilson filed a civil

11    action in the United States District Court for the Northern District of California entitled *Mark*

12    *McKnight, et al. v. Clarus Marketing Group, LLC, et al.*, Case No. 11-cv-1501-MEJ. On April

13    8, 2011, the case was reassigned to the Honorable Saundra Brown Armstrong.

14        On April 8, 2011, Plaintiff Nicole Hall filed a civil action in the United States District

15    Court for the Northern District of California entitled *Nicole Hall v. Clarus Marketing Group,*

16    *LLC, et al.*, Case No. 11-cv-1757-LB. On May 2, 2011, the case was reassigned to the

17    Honorable Saundra Brown Armstrong.

18        On April 20, 2011, Plaintiff Hall and then-plaintiffs McKnight and Wilson filed a

19    motion to consolidate the *Cox*, *McKnight*, and *Hall* actions.

20        On April 29, 2011, Plaintiff Joseph Lynch filed a civil action in the United States

21    District Court for the Southern District of California entitled *Joseph M. Lynch v. Clarus*

22    *Marketing Group, LLC, et al.*, Case No. 11-cv-0913-BEN (RBB). On May 4, 2011, Plaintiff

23    Lynch filed a notice of voluntary dismissal. On May 19, 2011, Plaintiff Cox filed an amended

24    complaint in the *Cox* action, which added Joseph Lynch as a new plaintiff and did not include

25    then-plaintiff Berentson.

26        On November 2, 2011, then-plaintiff Wilson filed a request for voluntary dismissal as to

himself in the *McKnight* action and, subsequently, on November 11, 2011, then-plaintiff McKnight filed a notice of voluntary dismissal of the *McKnight* action.

On November 11, 2011, Plaintiff Hall filed a notice of voluntary dismissal of the *Hall* action and on November 14, 2011, Plaintiffs Cox and Lynch filed a notice of voluntary dismissal of the *Cox* action.

On November 18, 2011, Plaintiffs Cox, Hall, and Lynch filed an action in this Court (Dkt. No. 1). On January 20, 2012, the action was reassigned to the Honorable Marilyn L. Huff, with the case number updated to 11-cv-2711-H (RBB) to reflect reassignment.

On November 22, 2011, Defendants responded to Plaintiffs' informal discovery requests, which were communicated to Defendants in an October 28, 2011 letter. Defendants simultaneously produced documents to Plaintiffs' counsel along with their written responses to the information requests in the context of a privileged mediation and settlement communication.

On April 10, 2012, the parties participated in a full-day private mediation session before Judge Edward A. Infante (Ret.). At the conclusion of the mediation, the parties reached an agreement on the high-level terms of a settlement, conditioned on the parties negotiating and executing a complete written agreement, which in turn is subject to court approval.

On May 25, 2012, Provide Commerce and CMG answered the complaint (Dkt. Nos. 13, 14). The answers generally and specifically denied the complaint's allegations and raised several separate and additional defenses.

The parties continued to negotiate the remaining terms of the settlement, and on October 2, 2012 they entered into the Settlement Agreement, which, as a class-wide settlement is subject to Court approval.[3]

### C. Plaintiffs' Discovery Efforts.

Plaintiffs have thoroughly investigated this case. Prior to filing the lawsuit, Plaintiffs

---

[3] Patterson Decl., ¶¶ 2-3.

conducted substantial research through public records and the Internet to verify the scope and nature of the conduct alleged.[4]  After filing the lawsuit, Plaintiffs continued their investigation through written discovery requests for certain categories of documents, including contracts between Provide Commerce and CMG and copies of insurance agreements that might provide coverage for Plaintiffs' claims, as well as data concerning the class size and revenues generated through Defendants' practices.  Defendants responded to plaintiffs' requests and produced certain documents on November 22, 2011 in the context of a privileged and inadmissible settlement and mediation communication, which were subsequently reviewed by Plaintiffs' counsel.[5]

Importantly, proposed Class Counsel is also familiar with the underlying practices and has heavily litigated the legal issues presented here in connection with a similar case against defendant Provide Commerce that is also pending in the Southern District of California.[6]  The *In re EasySaver Rewards* case challenges a different rewards program that utilized a similar online enrollment process.  That case has been heavily litigated by Class Counsel and Provide Commerce's counsel for more than three years.  Suffice to say, the parties have a strong handle on the underlying legal issues and have sufficiently ferreted out their respective strengths and weaknesses.

### D.    Mediation and Settlement Negotiations.

The parties prepared comprehensive mediation statements and participated in a full-day private mediation session with a highly-respected mediator in order to settle this case.[7]  At the conclusion of the mediation, the parties reached an agreement on the high-level terms of a settlement, conditioned on the parties negotiating and executing a complete written agreement,

---

[4] Patterson Decl., ¶ 6 .

[5] Patterson Decl., ¶ 7.

[6] *See In re EasySaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010).

[7] Patterson Decl., ¶ 2.

which in turn is subject to court approval.[8]   The parties continued to negotiate the details and remaining terms of the proposed Settlement Agreement over the course of several weeks, and the terms were memorialized in a negotiated memorandum of settlement.[9]

During the mediation and following settlement discussions, the parties engaged in negotiations that were at all times adversarial, non-collusive, and at arm's length. *Id.*  The parties vigorously clashed over core issues such as the amount of the Settlement Fund, the full amount and transferability of the 20% Off Code and $15 Credit. *Id.*  With Judge Infante's assistance, those negotiations finally resulted in an agreement in principle.[10]

Throughout the negotiations, the parties considered factors such as the ongoing cost of litigation, the potential damages, the risks of class certification and trial, and the possibility of appeals following any judgment.  Class Counsel believe that the proposed settlement is in the Class' best interest.[11]

## III.   THE SETTLEMENT TERMS

The details of the Settlement Agreement signed by the parties and attached to the Patterson Declaration as Exhibit 1 are summarized below.

### A.   The Settlement Class and Subclass.

The proposed settlement Class consists of

> All persons who, between February 16, 2007 and the date of entry of the Preliminary Approval order, placed an order with a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com.[12]

The proposed settlement Subclass consists of

---

[8] Patterson Decl., ¶ 3 .

[9] Patterson Decl., ¶ 3.

[10] Patterson Decl., ¶ 3 .

[11] Patterson Decl., ¶ 3.

[12] Patterson Decl., Ex. 1, Settlement Agreement, at 3..

> All persons who, between April 1, 2009 and December 13, 2009, placed an order with a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information).

Excluded from the Class and Subclass are (a) Defendants, (b) any entities in which Defendants have a controlling interest or which have a controlling interest in Defendants, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Defendants, and (d) the Judges presiding over this action and any of their employees or immediate family members. [13]

**B.      Relief to the Class and Subclass.**

In exchange for a release of claims and subject to this Court's approval, Defendants have agreed that (1) they will, via The Garden City Group, Inc., a neutral professional claims administrator, notify all Class members via direct email or U.S. Mail about their rights under the Settlement Agreement. [14] (2) After final approval, the claims administrator will directly email every Class member who is not a Subclass member a 20% Off Code.  No Class Member will be required to submit a claim form to receive this code.[15]  (3) The claims administrator will directly email every Subclass member who is not eligible or otherwise chooses not to make a claim for a monetary payment from the Settlement Fund a $15 Credit.  The 20% Off Code and $15 Credit will be fully transferable and valid for one year for online purchases at Proflowers.com, RedEnvelope.com, Berries.com and CherryMoonFarms.com. [16]  At the time of settlement, Plaintiffs' counsel verified that these websites offered a selection of items under $15, but Subclass members may use the money towards larger purchases as well. [17]  And (4) Defendants will fund a $500,000 Settlement Fund that eligible Subclass members can make

---

[13] Patterson Decl., Ex. 1, Exhibit B ("Full Notice")..

[14] Patterson Decl., Ex. 1, at 3, 8-9.

[15] Patterson Decl., Ex. 1, at 5.

[16] Patterson Decl.,Ex. 1, at 5-6.

[17] Patterson Decl., ¶ 8.

claims against for payments for membership fees up to $36.00. [18]

To make a claim from the Settlement Fund, Subclass members need only visit the neutral Claims Administrator's website, a link to which is provided to them via the direct email notice, and submit a Claim Form signed under penalty of perjury. [19] Subclass members will be required to submit their contact information and verify that they did not knowingly enroll and use the benefits of the FreeShipping.com service.[20] Subclass members will ***not*** be required to submit documents, or other proof of having been charged to make a claim.[21] The Claims Administrator will evaluate and calculate all claims for payment based upon Defendants' records. Claims will be paid on a *pro rata* basis up to $36.00. [22] The parties must meet and confer in good faith to resolve any disputed claims, with CMG's records being entitled to a rebuttable presumption of accuracy.[23] The Settlement Fund is non-reversionary and any remaining funds will be distributed as a *cy pres* award, subject to Court approval, to California Western School of Law to fund a chair, professorship, fellowship, lectureship, seminar series, or similar funding, gift, or donation program developed and coordinated between Provide Commerce and California Western School of Law relating to internet privacy or internet data security. [24]

### C.     Class Representatives' Incentive Payments.

Each of the Class Representatives took the initiative to be named in the lawsuit, assisted in the case investigations, stayed apprised of the litigation, and accepted substantial personal risks and responsibilities on behalf of the Class.[25] Subject to Court approval, the Settlement

---

[18] Patterson Decl., Ex. 1, at 5-6

[19] Patterson Decl., Ex. 1, Exhibit C ("Summary Notice").

[20] Patterson Decl., Ex. 1, Exhibit D ("Claim Form").

[21] Patterson Decl., Ex. 1, Exhibit D ("Claim Form").

[22] Patterson Decl., Ex. 1, Exhibit B.

[23] *See* Patterson Decl., Ex. 1, at 10.

[24] Patterson Decl., Ex. 1, at 6.

[25] Patterson Decl., at 9.

Agreement provides for incentive awards of up to $5,000 each for Class Representatives Cox, Hall, and Lynch (for a total of up to $15,000).[26] These awards are based on each Class Representative's respective efforts and are designed to recognize these efforts and the personal risks they undertook on behalf of the Class.

### D. Attorneys' Fees and Costs.

The Settlement Agreement provides that Class Counsel may request a fees and costs award of ***up to*** a total of $640,000. This is reasonable and fair under well-settled Ninth Circuit law. Class Counsel will file a detailed application for attorneys' fees and costs at least fourteen (14) days before the objection deadline and prior to the fairness hearing.[27]

### E. Settlement Administration and Notice.

Class members will receive the Summary Notice via direct email or U.S. Mail within 60 days of this Court's entry of the preliminary approval order.[28] Where direct email notice fails or "bounces back," the Claims Administrator will send a Summary Notice via postcard sent by U.S. Mail within 74 days to each person to whom Summary Notice by direct email was not deliverable and for whom CMG has a facially valid postal address.[29] Email notice will provide class members with an electronic link to a website dedicated to the settlement and containing Full Notice details.[30] The Summary and Full Notices include all the pertinent information necessary for Class and Subclass members to make an informed decision about whether to make a claim, object to the proposed settlement, or exclude themselves from the Class. The Full Notice will also provide further detail of the relief provided by the settlement, the range of fees and costs to be sought by Class Counsel, and the scope of the release and binding nature of the settlement on Class members. *Id.,* Exhibit B. Class members may also download a copy of

---

[26] Patterson Decl., Ex. 1, at 7.

[27] Patterson Decl., Ex. 1, at 7.

[28] Patterson Decl., Ex. 1, at 8.

[29] Patterson Decl., Ex. 1, at 9.

[30] *See* Patterson Decl., Ex. 1, Exhibits B-C.

the Claim Form and Full Notice or request that a paper copy of the Claim Form and Full Notice be sent via U.S. Mail.[31]

To make a claim for a payment from the Settlement Fund, Subclass members will only be required to supply their contact information and verify that they did not knowingly enroll in and use any of the benefits of FreeShipping.com.[32] Using electronic records provided by CMG the Claims Administrator will assess the validity of the claims and calculate the amounts owed. The parties must meet and confer in good faith to resolve any disputed claims, with CMG's records being entitled to a rebuttable presumption of accuracy.[33]

**F. Objections and Opt-Out Procedures.**

To be excluded from the Class, a Class member must timely send a written request for exclusion to the Claims Administrator at the address set forth in the Class Notice. The request for exclusion must contain (a) the name of the Action, *"Daniel Cox, et al. v. Clarus Marketing Group, LLC, et al."*; (b) the Class member's full name, address, and telephone number; and (c) a statement that he/she does not wish to participate in the settlement. All requests for exclusion must be made as specified in the Class Notice and postmarked within 120 days after entry of the Preliminary Approval Order.[34]

Any Class member who does not submit a valid and timely request for exclusion to the Claims Administrator may object to the settlement by filing a written objection with the Court and delivering a copy of the objection to Class Counsel and Defendants' Counsel. The objection must be postmarked by the deadline specified in the Class Notice (within 120 days after entry of the Preliminary Approval Order), and must include (1) a heading containing the name and case number of the Action: *Daniel Cox, et al. v. Clarus Marketing Group, LLC, et al.*, Case No. 11-cv-2711-H (RBB); (2) the Class member's name, email address, postal

---

[31] Patterson Decl., Ex., 1, Exhibits C-D..

[32] Patterson Decl. Ex. 1, Exhibit D.

[33] Patterson Decl. Ex. 1, at 10.

[34] Patterson Decl., Ex. 1, at 11.

address, and telephone number; (3) a detailed statement of each objection and the factual and legal basis for each objection, and the relief that the Class member is requesting; (4) a list of and copies of all documents or other exhibits which the Class member may seek to use at the Fairness Hearing; and (5) a statement of whether the Class member intends to appear, either in person or through counsel, at the Fairness Hearing, and if through counsel, a statement identifying the counsel's name, postal address, phone number, email address, and the state bar(s) to which the counsel is admitted. [35]

## IV.    ANALYSIS

### A.    The Law Favors Settlement.

It is well established that settlements are the preferred means of dispute resolution, particularly in class actions where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation. In fact, "voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation…."[36] Further, the preference for settlement is evident in the Federal Rules of Civil Procedure themselves.[37]

Policies favoring settlement apply with particular force in this case, where more than a million Class members across the country were charged fees in connection with FreeShipping.com. The individual damages incurred vary, but the average out-of-pocket claim is less than one hundred dollars per Class member. Given the very high costs of litigating a consumer protection case against large and well-funded companies, Class members would have no practical way to individually pursue their claims. Plus, individual litigations would clog the courts and take years to resolve. The proposed settlement is the best and only means to ensure that all Class members receive prompt and efficient relief.

---

[35] Patterson Decl., Ex. 1, at 10.

[36] *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983)).

[37] *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

**B.      The Preliminary Approval Process.**

Court approval of class action settlements is a two-step process: preliminary approval and final approval. At the preliminary approval stage, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." [38]   The court must also make a preliminary determination whether the class may be certified for settlement purposes under Rule 23.[39]

After preliminary approval, notice of the proposed settlement is given to the class, and the court conducts a final approval hearing, also known as a fairness hearing.[40]  At the fairness hearing, the court will consider arguments for and in opposition to approval of the settlement, including comments submitted by class members in response to the class notice.  The fairness hearing, however, is not "a trial or rehearsal for trial on the merits." [41]  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."[42]

While the parties certainly believe that this settlement meets all the criteria for final approval, at this juncture, they ask only that the Court take the first step in the process and grant preliminary approval of the settlement.

**C.      The Settlement Should Be Preliminarily Approved.**

At this preliminary approval stage, the Court need only "determine whether the

---

[38] *Manual for Complex Litigation, (Fourth)* ("*MCL 4th*") § 21.632 (2004).

[39] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997).

[40] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

[41] *Officers for Justice*, 688 F.2d at 625.

[42] *Id.*

proposed settlement is within the range of possible approval."[43] So if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . ."[44]

In determining whether a settlement falls within the range of possible approval, courts consider whether the negotiations occurred at arm's length, whether sufficient discovery or investigation took place, and whether the proponents of the settlement are experienced in similar litigation.[45] Considering the settlement efforts in this case, these criteria are unquestionably satisfied.

1. **The Settlement Enjoys a Presumption of Fairness Because the Negotiations Were Conducted at Arm's Length.**

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. On the contrary, all material terms of the Settlement Agreement were reached after adversarial settlement discussions and a private mediation session conducted by a highly regarded and experienced mediator, Judge Infante.[46] The fact that mediation was overseen by a neutral third party evidences the non-collusive nature of the negotiations.[47]

2. **Counsel's Discovery Efforts.**

Plaintiffs' counsel's discovery efforts began before the lawsuits were even filed and have been ongoing through over a year of litigation. Counsel's investigation includes extensive

---

[43] *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.1982)).

[44] *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing *Manual for Complex Litigation*, § 30.44 (2nd ed. 1985)).

[45] *See* Alba Conte & Herbert B. Newberg, *2 Newberg on Class Actions*, § 11.41 (4th ed. 2002).

[46] *See also* Section II.D., *supra*.

[47] *See, e.g., In Re HP Laser Printer Litig.*, No. SACV 07-0667 AG (RNBx), 2011 WL 3861703, at *4 (C.D. Cal. Aug 31, 2011) (finding the fact that the parties appeared before a neutral third party mediator evidence supporting a finding that there was no collusion between the parties in reaching settlement).

1  online research, requests for responses to written questions and two categories of documents

2  from Provide Commerce and CMG, and reviewing and analyzing documents and information

3  produced by the Defendants. [48]

### 3. The Settlement Suffers From No Obvious Deficiencies.

The settlement has no "obvious deficiencies" and confers substantial benefits to Class

members, as set forth in greater detail above. In sum, as many as 1.13 million Class members

who were enrolled in FreeShipping.com will be given either (i) a fully transferable 20% Off

Code to use on certain Provide Commerce websites, (ii) a fully transferable $15 Credit to use

on certain Provide Commerce websites, or (iii) the opportunity to submit a claim to receive a

cash payment for monthly fees charged for FreeShipping.com, up to $36.00. Given the

substantial nature of the relief and the uncertainties of protracted litigation, the settlement is

unquestionably well within the range of possible approval.

### 4. The Incentive Awards Are Reasonable.

The proposed Class Representative incentive awards are fair and reasonable. As the

Ninth Circuit has observed:

> Incentive awards are fairly typical in class action cases. Such
> awards are discretionary, and are intended to compensate class
> representatives for work done on behalf of the class, to make up
> for financial or reputational risk undertaken in bringing the
> action, and, sometimes, to recognize their willingness to act as a
> private attorney general. Awards are generally sought after a
> settlement or verdict has been achieved. [49]

The parties have agreed that the Class Representatives may seek incentive awards of up

to $5,000 each (for a total of up to $15,000). Class Representatives Cox, Hall and Lynch were

willing to make the personal sacrifices associated with being a named plaintiff in a federal

lawsuit for the good of the Class. Each of the Class Representatives took the initiative to be

named in lawsuit, assisted in the case investigations, consulted with Class Counsel, and

---

[48] *See also* Section II.C, *supra.*

[49] *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

1    accepted substantial personal risks and responsibilities on behalf of the Class. [50]

2        The amounts sought are reasonable in light of these circumstances, and Defendants do

3    not object to these amounts. [51]

4                          5.      **The Attorneys' Fees And Costs Are Reasonable.**

5        Considering the excellent value of the settlement, the benefits conferred on the Class,

6    and Class Counsel's knowledge and experience, the attorneys' fees and costs are reasonable.

7    Class Counsel achieved an excellent settlement while ultimately avoiding the uncertainties and

8    risks of contested class certification and trial.  Throughout this litigation, Class Counsel has

9    dedicated substantial time and resources litigating the case and will continue to expend

10   significant amounts of time through the settlement and claims process. [52]  Class Counsel will

11   file a separate and more detailed motion for an award of attorneys' fees and costs at least

12   fourteen (14) days prior to the deadline for objections by Class members and in advance of the

13   fairness hearing.  For purposes of preliminary approval, the Court is only being asked to

14   determine whether the Settlement Agreement's provision allowing Class Counsel to *request* up

15   to the stated amount should be preliminary approved.

16       The Settlement Agreement provides and the parties have agreed that Class Counsel may

17   apply to the Court for a fees and costs award not to exceed $640,000. [53]  The ***maximum*** fees

18   constitute less than twenty-five percent of the total value of the settlement, which is low for the

19   Ninth Circuit where many courts award fees in excess of the twenty-five percent federal

20

21   _____

     [50] Patterson Decl., ¶ 9.

22   [51] *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-1827 SI, 2011 WL 7575003, at *2 (N.D.
     Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class representatives "in recognition of their work
23   performed for the benefit of the Class and the risks undertaken"); *In re Wachovia Corp. "Pick-A-Payment" Mortg.
     Mktg. & Sales Pracs. Litig.*, No. 5:09-md-02015 JF, 2011 WL 1877630, at *7 (N.D. Cal. May 17, 2011)
24   (approving class representative incentive awards ranging from $2,500 to $14,250 each); *Singer v. Becton
     Dickinson and Co.*, No. 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class
25   representative award of $25,000 reasonable).

26   [52] *See* Patterson Decl., ¶¶ 6-7.

     [53] Patterson Decl., Ex. 1, at 7.

benchmark. [54] "[A]bsent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%," reasoning that this will "encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions." [55]

While the total value of the benefits obtained on behalf of the Class is estimated to exceed $2.65 million, for the purposes of calculating fees based on the common fund approach, Plaintiffs did not attribute any monetary value at all to the 20% Off Codes and conservatively discounted the value of the $15 Credits to 85 percent of their $15 face value, which is reasonable and supported by fee orders from other district courts in this Circuit. For example, the California Central District in *Fernandez v. Victoria Secret Stores, LLC* valued merchandise codes in settlement at 85 percent of face value, noting that the cards were fully transferrable and that class members would likely use the cards themselves. Similarly, the California Northern District in *Young v. Polo Retail, LLC,* found that the cash value of merchandise codes in a settlement to be 80-85 percent of face value. [56]

As in *Fernandez* and *Young*, the 20% Off Code and $15 Credit here are fully transferable. Under applicable case law, they have independent value to the Class. Class members are also very likely to use the 20% Off Code and $15 Credit themselves since many Class members continue to be customers of Provide Commerce, and because, indeed, Class members have already demonstrated an interest in receiving free shipping on future purchases from Provide Commerce's sites. Importantly, the conditions of this settlement are considerably

---

[54] *See, e.g., In re Pac. Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (33% fee award); *Williams v. MGM-Pathe Comm'n Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (one-third of total fund awarded); *see also In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (noting that fee awards in common fund cases "almost always hovers around 30% of the fund created by the settlement").

[55] *In re Activision Sec. Litig.,* 723 F. Supp. at 1378-79.

[56] *See, e.g., Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *6, 10-11 (C.D. Cal. Jul. 21, 2008) (); *Young v. Polo Retail, LLC,* Case No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) ().

more favorable than *Fernandez* and *Young* because Class and Subclass members will ***automatically*** receive the 20% Off Code or $15 Credit, respectively, without being required to submit a claim. By contrast, in *Fernandez* and *Young*, where the court awarded class counsel ***34%*** and ***31%*** of the discounted value of the settlement, respectively, class members were required to submit claims to receive any benefit at all.[57] In those cases, the amount of merchandise codes that were actually distributed was drastically less than the amount being made available, which was used to calculate the percentage of fees awarded.

Again, at this juncture Class Counsel has not yet requested a specific fee award so the Court is merely being asked to approve the right to do so as set forth in the Settlement Agreement.

### 6. The Proponents of the Settlement Are Experienced in Similar Litigation.

Proposed Class Counsel have extensive experience in prosecuting complex class actions, including cases involving consumer fraud.[58] With their combined breadth and depth of experience, there can be no doubt that Class Counsel are qualified to conduct the litigation. Likewise, Defendants' counsel are well versed in complex class action and are highly qualified defense counsel. Accordingly, the parties are well-suited to make informed judgments regarding the nature of the Settlement.

### 7. The Proposed Settlement Class Warrants Certification.

In the context of granting preliminary approval of the Settlement, this Court must also determine that the proposed Class is certifiable.[59] Certification is warranted where, as here, it is demonstrated that the four prerequisites of Rule 23(a), numerosity, commonality, typicality, and adequacy of representation, and one of the three requirements of Rule 23(b), are satisfied.

---

[57] *See Fernandez,* 2008 WL 8150856, at *16; *Young*, 2007 WL 951821, at *5.

[58] Patterson Decl., Exs. 2-5.

[59] *See MCL 4th,* § 21.632; *Amchem*, 521 U.S. at 620.

60 Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." [61]   Given that the Class will be certified for the purposes of settlement only, the Rule 23(b)(3) requirement of superiority need not be met here because manageability issues are not a bar to certification "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Plaintiffs propose that the Court provisionally certify this action as a class action pursuant to Rule 23 for the purpose of settlement. Such provisional certification is considered an appropriate device in the settlement of class actions where the agreement to settle the case occurs before certification. [62]   Under the circumstances, there is more than a sufficient factual basis for the Court to provisionally certify this action as a class action for the purposes of settlement and to appoint Plaintiffs' Co-Counsel as Class Counsel.

With respect to numerosity, Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. [63]   Here, more than a million consumers were enrolled in the allegedly deceptive FreeShipping.com service.   By any measure, the numerosity requirement is met.  While it is true that on the low end, the Supreme Court has indicated that a class of 15 "would be too small to meet the numerosity requirement," [64] the Ninth Circuit recently upheld a class of only 20 persons. [65]

Rule 23(a)(2) requires that the court find that "there are questions of law or fact

---

[60] *See* Fed. R. Civ. P. 23.

[61] Fed. R. Civ. P. 23(b)(3).

[62] *See, e.g., Jaffe v. Morgan Stanley & Co., Inc.*, No. C-06-3903 TEH, 2008 WL 346417, at *2-3 (N.D. Cal. Feb. 7, 2008); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *2-3 (N.D. Cal. Jun. 30, 2007).

[63] Fed. R. Civ. P. 23(a)(1).

[64] *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

[65] *Rannis v. Recchia*, 380 Fed. Appx. 646, 650-51 (9th Cir. 2010).

common to the class."[66]  But the requirement is permissive: "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[67]  Rule 23(b)(3) certification is proper because the predominance and superiority requirements of that prong of Rule 23 are satisfied as well.[68]

Here, common questions of law and fact exist and predominate (as required by Rule 23(b)(3)) over any individual questions, including, *inter alia*:

**1.** Whether Class members can lawfully authorize an online retailer like Provide Commerce to transfer their credit card or debit card information to CMG by providing their email address and zip code on an internet form;

**2.** Whether Class members can lawfully authorize CMG to bill their credit and debit cards by providing their email address and zip code;

**3.** Whether an email address and/or zip code on a web page constitutes a "written authorization" under the EFTA;

**4.** Whether CMG was required under the EFTA to provide debit card Subclass members with a copy of their purported written authorization to begin charging their debit cards and whether CMG provided such copies;

**5.** Whether Class members were enrolled in FreeShipping.com;

**6.** Whether Class members' billing information was obtained by CMG without consent;

**7.** Whether Defendants engaged in conversion;

**8.** Whether Defendants were unjustly enriched;

**9.** Whether Defendants breached Plaintiffs' and Class members' privacy rights by transmitting their private payment information;

**10.** Whether Defendants engaged in negligence or unfair or unlawful business practices;

**11.** Whether Defendants' contracts, agreements, or policies contained unconscionable terms;

---

[66] Fed. R. Civ. P. 23(a)(2).

[67] *Hanlon*, 150 F.3d at 1019.

[68] *See* Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

**12.** Whether CMG violated the EFTA;

**13.** Whether Defendants violated the CLRA; (16) whether Defendants violated the UCL;

**14.** Whether CMG violated the CUTPA;

**15.** Whether Defendants violated Michigan Compiled Laws § 600.2919a; and

**16.** Whether Plaintiffs and Class members are entitled to relief and the appropriate measure of damages.

Where, as here, Defendants' liability would be determined primarily by looking at their uniform policies and practices, websites and code, the common questions in this litigation will predominate over any individual issues.

Plaintiffs also meet the typicality requirement of Rule 23(a). All Plaintiffs, like all Class members, were enrolled in FreeShipping.com after having ordered a product on a Provide Commerce website. All Plaintiffs assert the similar or identical legal claims as all Class members.

With respect to the adequacy of representation requirement of Rule 23(a), the named plaintiffs must not have interests antagonistic to those of the class, and the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation. [69] As discussed above, Class Counsel are exceptionally well qualified, experienced and able to conduct the litigation. In addition, the Class Representatives' interests are co-extensive with those of the Class, since each Class Representative and every Class member has been injured in the same manner by Defendants, and Plaintiffs seek relief that is identical to that which is sought by every other member of the Class. [70]

Having volunteered to serve as representatives for the Class, Plaintiffs have taken a leadership role in the litigation, performed and stood ready to perform any number of tasks, and demonstrated a commitment to bringing about the best results possible for their fellow Class

---

[69] *See Hanlon,* 150 F.3d at 1020.

[70] *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (finding that plaintiffs must have been injured themselves, not merely represent injured parties).

1    members.  Moreover, Plaintiffs and Class Counsel have no interests antagonistic to those of the

2    Class and are not subject to any unique defenses.  Plaintiffs and Class Counsel have and will

3    continue to fairly and adequately protect the interests of the Class.

4            **D.      The Proposed Form And Method Of Class Notice Satisfies Due Process.**

5            Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that "[t]he court must

6    direct notice in a reasonable manner to all class members who would be bound by the

7    proposal."   Rule 23 further requires "the best notice practicable under the circumstances,

8    including individual notice to all members who can be identified through reasonable effort." [71]

9            Here, the parties have agreed to provide direct email notice of the settlement to all Class

10   members, provide supplemental notice by U.S. Mail where emails are no longer valid, and

11   provide information via a website created for the settlement managed by the Claims

12   Administrator. [72]  Where, as here, Class members provided their email addresses to Defendants

13   in connection with their original transactions, such notice more than satisfied notice and due

14   process requirements. [73]

15          The Summary Notice[74] will be sent to all Class members via email or, alternatively, via

16   postcard by U.S. Mail in the event the email is undeliverable.  Class members can then access

17   the Full Notice[75] and Claim Form[76] on a website established and maintained by the Claims

18   Administrator.  Class members may also download the Full Notice and Claim Form or request

19   that a paper copy of the Full Notice and Claim Form be sent via U.S. Mail. [77]

20   _____

21   [71] *See* Fed. R. Civ. P. 23(c)(2)(B).

     [72] Patterson Decl., Ex. 1, at 8-9.

22   [73] *See, e.g., Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007)
23   (finding email notice particularly appropriate in case where class members' claims arise from their visits to
     defendants' websites) (citing *Lundell v. Dell, Inc*., No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *1 (N.D.
24   Cal. Dec. 5, 2006) (finding direct email notice best practicable notice)).

     [74] Patterson Decl., Ex. 1, Exhibit C.
25   [75] Patterson Decl., Ex. 1 Exhibit B.

26   [76] Patterson Decl. Ex. 1, Exhibit D.

     [77] Patterson Decl., Ex. 1, Exhibit C.

The Full and Summary Notices were collaboratively written by the parties, and are written in plain English. Moreover, the Full and Summary Notices clearly provide information to Class members about the benefits of the settlement, how to be excluded from the Class or object to the settlement, and how Class members' legal rights are affected by remaining in or opting out of the Class.

For the reasons set forth above, the notice plan agreed to in the settlement is the best notice practicable and affords Class members with all due process protections required by Rule 23. As such, the Full and Summary Notices and notice plan should be approved.

## V.  **CONCLUSION**

For all of the foregoing reasons, the Plaintiffs respectfully request that this Court grant this motion in its entirety consistent with the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approval of Form Notice and Preliminary Certification of Settlement Class submitted herewith.

Dated: October 12, 2012                    PATTERSON LAW GROUP

By:  _____*/s/ James R. Patterson*_____
James R. Patterson

James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  (619) 756-6990
Facsimile:  (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

Bruce Steckler, *pro hac vice pending*
Mazin A. Sbaiti, State Bar No. 275089
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181
bsteckle@baronbudd.com

msbaiti@baronbudd.com

David E. Bower, State Bar No. 119546
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
dbower@faruqilaw.com

L. Timothy Fisher, State Bar No. 191626
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com

Scott A. Bursor, State Bar No. 276006
BURSOR & FISHER, P.A.
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

*Plaintiffs' Co-Counsel and Proposed Class Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I, James R. Patterson, hereby certify that on October 12, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record registered with the CM/ECF system.

Dated: October 12, 2012

PATTERSON LAW GROUP

By: _____/s/ James R. Patterson_____
James R. Patterson

James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990
Facsimile: (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com