**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL COX; JOSEPH M. LYNCH; and NICOLE HALL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARUS MARKETING GROUP, LLC.; PROVIDE-COMMERCE, INC.; and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO. 11-CV-2711 H (RBB)<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS AND SUBCLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) APPOINTING CLASS REPRESENTATIVES;**<br><br>**(3) APPOINTING CLASS COUNSEL;**<br><br>**(4) PRELIMINARILY APPROVING CLASS SETTLEMENT;**<br><br>**(5) APPROVING CLASS NOTICE; and**<br><br>**(6) SCHEDULING FAIRNESS HEARING** |

On October 12, 2012, Plaintiffs Daniel Cox, Joseph M. Lynch, and Nicole Hall filed a motion seeking preliminary approval of class settlement, provisional class certification, approval of class notice, and scheduling of a fairness hearing. (Doc. No. 23.) The Court vacated the November 13 hearing on Plaintiffs' motion, concluding that the motion is capable of resolution without oral argument. (Doc. No. 26.) For the reasons set forth below, the Court grants Plaintiffs' motion.

///

- 1 -

## Background

**A.   Facts**

This case arises out of Defendants' allegedly unfair and unlawful offer for "free shipping" to online customers shopping on websites owned and operated by Provide Commerce, Inc. ("Provide Commerce"). Plaintiffs allege that while completing their online purchases on Provide Commerce's website ProFlowers.com, Provide Commerce's website generated a pop-up window containing a coupon offer for free shipping. (Doc. No. 1, "Compl." ¶17.) Upon clicking on the pop-up window, Plaintiffs allege that they were directed to an interface operated by Clarus Marketing Group, LLC ("CMG") and presented with an offer for free shipping on their current transaction, plus free shipping rebates on twelve future orders from ProFlowers.com. Id. To accept the offer, Plaintiffs allege that they were asked to enter their email address and zip code. Id. Plaintiffs allege that they were never informed that by accepting the offer, they were authorizing CMG to enroll them in CMG's membership programs, FreeShipping.com Insider's Club or FreeShipping.com ("FreeShipping.com"). Id. Plaintiffs allege that as members of FreeShipping.com, they were charged a monthly fee between $9 and $20. (Id. ¶1.) Plaintiffs allege that they did not supply CMG with their private payment information. (Id. ¶¶17, 25.) Rather, Plaintiffs allege that Provide Commerce provided their information to CMG without their knowledge or consent. Id.

**B.   Procedural History**

On February 16, 2011, Plaintiff Daniel Cox and then-plaintiff Bradley Berentson commenced a civil action in the Northern District of California. Daniel Cox, et al. v. Clarus Marketing Group, LLC, et al., No. 11-cv-0729 (DMR). On March 24, 2011, the case was reassigned to the Honorable Saundra Brown Armstrong. (Doc. No. 23-2, "Proposed Settlement," ¶A.)

On March 29, 2011, then-plaintiffs Mark McKnight and James Wilson filed a civil action in the Northern District of California. Mark McKnight, et al. v. Clarus Marketing Group, LLC, et al., No. 11-cv-1501 (MEJ). On April 8, 2011, the case was reassigned to Judge Armstrong. (Proposed Settlement ¶B.)

On April 8, 2011, Plaintiff Nicole Hall filed a civil action in the Northern District of California. Nicole Hall v. Clarus Marketing Group, LLC, et al., No. 11-cv-1757 (LB). On May 2,

1    2011, the case was reassigned to Judge Armstrong. (Proposed Settlement ¶C.)

2         On April 20, 2011, Plaintiff Hall and then-plaintiffs McKnight and Wilson filed a motion to
3    consolidate the Cox, McKnight, and Hall actions. (Proposed Settlement ¶D.)

4         On April 29, 2011, Plaintiff Joseph Lynch filed a civil action in the Southern District of
5    California. Joseph M. Lynch v. Clarus Marketing Group, LLC, et al., No. 11-cv-0913 (BEN);
6    (Proposed Settlement ¶E.)

7         On May 4, 2011, Plaintiff Lynch filed a notice of voluntary dismissal. (Proposed Settlement
8    ¶F.) On May 19, 2011, Plaintiff Cox filed an amended complaint adding Plaintiff Lynch as a new
9    plaintiff and dropping then-plaintiff Berentson. (Proposed Settlement ¶G.)

10        Then-plaintiffs Wilson and McKnight and Plaintiff Hall filed notices of voluntary dismissal
11   of their respective actions. (Proposed Settlement ¶¶H-J.) On November 14, 2011, Plaintiffs Cox and
12   Lynch filed a notice of voluntary dismissal of the Cox action. (Proposed Settlement ¶K.)

13        On November 18, 2011, Plaintiffs filed this action, a putative class action against Defendants
14   CMG and Provide Commerce, asserting causes of action against one or both Defendants for (1) RICO
15   violations, 18 U.S.C. § 1962(c); (2) violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693;
16   (3) declaratory relief; (4) conversion; (5) negligence; (6) invasion of privacy under the California
17   Constitution; (7) invasion of privacy; (8) violations of the California Consumers Legal Remedies Act,
18   Cal. Civ. Code §1770(a); (9)-(10) unlawful, unfair and fraudulent business practices in violation of
19   Cal. Bus. & Prof. Code §17200; (11) violation of the Connecticut Unfair Trade Practices Act; and (12)
20   violation of the Michigan Compiled Laws § 600.2919a. (See generally Compl.)

21        Shortly thereafter, Plaintiffs requested that Defendants provide discovery materials, including
22   documents relating to insurance agreements and data concerning class size and revenues generated
23   by Defendants' practices. (Doc. No. 23-1, "Patterson Decl.," ¶7.) Defendants responded to Plaintiffs'
24   discovery requests by producing certain documents on November 22, 2011. Id. On April 10, 2012,
25   the parties participated in a day-long mediation session before an experienced mediator. (Id. ¶¶2-3.)
26   With the mediator's assistance, the parties reached a settlement in principle. Id. On May 25, 2012,
27   Provide Commerce and CMG filed separate answers to the complaint, in which they denied Plaintiffs'
28   allegations and raised various defenses. (Doc. Nos. 13, 14.) On October 2, 2012, the parties entered

into a Proposed Settlement. (Patterson Decl. ¶4; Proposed Settlement.)

**C.    Proposed Settlement**

The Proposed Settlement provides relief to a proposed class comprising all persons who, between February 16, 2007 and the date of the Court's order granting preliminary approval, placed an order on a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com. (Proposed Settlement ¶1.8.) The Proposed Settlement provides additional relief to a proposed subclass comprising all persons who, between April 1, 2009 and December 13, 2009, placed an order on a Provide Commerce website and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his email address and zip code without any additional contact or billing information. (Id. ¶1.9.)

For class members who are not subclass members, Provide Commerce agrees to provide each a 20% Off Code that is fully transferable and valid for purchases on certain Provide Commerce websites. (Id. ¶2.1.) The 20% Off Code expires one year after distribution and is subject to certain "black out" dates. Id. For subclass members, Provide Commerce agrees to provide a fully transferable $15 credit that is valid for purchases on certain Provide Commerce websites. (Id. ¶2.3.) The $15 credit also expires one year after distribution and is subject to certain "black out" dates. Id. In addition to the $15 credit, Provide Commerce agrees to establish a non-reversionary settlement fund of $500,000. (Id. ¶2.2.) Eligible subclass members will receive payment "equal to the amount of fees that the Subclass Member paid to CMG for FreeShipping.com, less any partial refund or chargeback received for such fees, up to a maximum payment of $36.00." (Id. ¶2.2(a).) To receive payment, subclass members will have to submit a claim form stating, among others, that they did not knowingly authorize their enrollment in FreeShipping.com and did not take advantage of any benefits of FreeShipping.com. Id. Subclass members who received a full refund or chargeback, or who were not charged fees at all, will not be eligible to receive payment from the fund, but they may still receive the $15 credit. Id. If the claims exceed the amount of the fund, the payments will be reduced on a pro-rated basis such that the total payments do not exceed the amount of the fund. Id. Any unclaimed portion will be paid to the California Western School of Law to be "used for a chair, professorship, fellowship, lectureship, seminar series, or similar funding, gift, or donation program developed and

1 coordinated between Provide Commerce and California Western School of Law . . . regarding internet
2 privacy or internet data security." (Id. ¶2.2(b).)

3 Class members who wish to opt-out must notify the settlement claims administrator no later
4 than one-hundred-and-twenty days after the Court grants preliminary approval to the Proposed
5 Settlement. (Id. ¶3.10.) Named Plaintiffs agree not to seek incentive awards in excess of $5,000 per
6 plaintiff. (Id. ¶2.4.) Class counsel agrees not to seek an award for attorneys' fees and costs in excess
7 of $640,000. (Id. ¶2.5.)

8 In exchange, class members, other than those who opt-out, agree to release all claims against
9 Defendants that are based on facts, omissions or other conduct that have been or could have been
10 alleged in this action. (Id. ¶4.2.)

## Discussion

12 When the parties reach a settlement agreement prior to class certification, the court is under
13 an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and
14 the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the
15 court must first assess whether a class exists, and second, determine whether the proposed settlement
16 is fundamentally fair, adequate, and reasonable. Id.

17 **I.      Class Certification**

18 A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil
19 Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection
20 (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present
21 case, Plaintiffs seek to certify both a Class and a Subclass for purposes of settlement. As defined in
22 the Proposed Settlement, the Class includes:

23 > All persons who, between February 16, 2007 and the date of entry of the
> Preliminary Approval Order, placed an order with a website operated by Provide
24 > Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's
> Club or FreeShipping.com.

26 (Proposed Settlement ¶1.8.) The Subclass includes:

27 > All persons who, between April 1, 2009 and December 13, 2009, placed an
> order with a website operated by Provide Commerce, Inc. and were subsequently
28 > enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering
> his or her email address and zip code (as opposed to additional contact and

billing information) to enroll.

(Id. ¶1.9.)

## A. Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs' counsel estimates that the proposed Class will include over one million members. (Doc. No. 23-7 at 25.) Such a large number of class members is far too numerous to be joined as plaintiffs in this lawsuit. Accordingly, the numerosity prerequisite is met in this case.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Here, there are many questions of law and fact that are common to the class; specifically, whether CMG adequately disclosed the terms of its free shipping offer to class members. Accordingly, the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(c). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). Here, both Plaintiffs and purported class members claim the same injury – enrollment in CMG's membership programs without their knowledge or consent. (Compl. ¶2.) As Plaintiffs' claims are reasonably co-extensive with the claims of absent class members, the typicality prerequisite is met.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiffs and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there does not appear to be any conflicts of interest between Plaintiffs and the absent class members. Additionally, Plaintiffs have pursued the interests of the class by engaging in case investigations and assisting counsel with other aspects of the case. (Patterson Decl. ¶9.) Plaintiffs' counsel is experienced in consumer class actions. (Doc. No. 23-3, Exs. 2-5.) Moreover, Plaintiffs' counsel represents that they are particularly knowledgeable regarding the facts and the law at issue in this case as they are currently in litigation against Provide Commerce involving similar class allegations. In re Easysaver Rewards Litig., 737 F. Supp. 2d 1159 (S.D. Cal. 2010). Accordingly, the adequacy of representation requirement is met in this case, and Plaintiffs Cox, Lynch, and Hall are appointed class representatives.

For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

**B.    Rule 23(b)(3)**

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Hanlon, 150 F.3d at 1022-23. Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

**1.    Predominance**

The predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). This

1 analysis requires more than proof of common issues of law and fact. Id. Rather, the common
2 questions should "present a significant aspect of the case and . . . be resolved for all members of the
3 class in a single adjudication." Id. (internal quotation omitted).

4 Here, a significant issue is whether CMG's free shipping offer adequately disclosed, if at all,
5 that by accepting the offer, Plaintiffs and class members were authorizing CMG to enroll them in
6 CMG's membership programs and authorizing CMG to charge a monthly fee. Another significant
7 issue is whether Plaintiffs and class members authorized Provide Commerce to provide their private
8 payment information to CMG. Both issues are common to the class and are capable of resolution in
9 a single adjudication as there is no allegation that the disclosures made by CMG or Provide Commerce
10 differed materially during the relevant period. (See Compl.) Courts have found that common factual
11 issues involving a single advertisement seen by all class members can predominate over individual
12 issues. See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23,
13 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that
14 certain of its cereal products can support a family's immune system was false and misleading); cf.
15 Gonzalez v. P&G Co., 247 F.R.D. 616, 622-23 (S.D. Cal. 2007) (refusing to certify consumer class
16 action as evidence showed that defendant "employed a wide variety of representations in its labeling,
17 television commercials, website promotions, and other promotions" and, thus, class members may
18 have relied on different representations or may not have been exposed to any of the allegedly false
19 representations). With respect to the proposed subclass, the primary issue – whether entering an email
20 address and zip code constitutes lawful authorization for Provide Commerce to supply subclass
21 members' private payment information to CMG and lawful authorization for CMG to charge a
22 monthly fee – is common to the subclass. (Doc. No. 23-7 at 26.) Additionally, some of the significant
23 individual issues may not require individualized proof. See In re Tobacco II Cases, 46 Cal. 4th 298,
24 326 (2009) (holding that plaintiffs need not prove individual reliance under the fraudulent prong under
25 the UCL if "there is a showing that a misrepresentation was material"). Accordingly, the Court
26 concludes that the issues common to the proposed class and subclass are significant and predominate
27 over individual issues. As such, the predominance requirement is met.
28 ///

**2.     Superiority**

The superiority inquiry requires determination of "whether objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Further, classwide treatment of these issues will be efficient as the class members' claims appear to involve a relatively small amount of damages per member. (Compl. ¶1.) Accordingly, the superiority requirement is met here.

For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule 23(b)(3). Accordingly, the Court grants preliminary certification to the proposed class and subclass for purposes of the Proposed Settlement. The Court, however, may review this finding at the final approval hearing.

**II.     The Settlement**

Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Id. In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). Where a proposed settlement contains a charitable gift, or cy pres award, a court must "ensure that the settlement retains some connection to the plaintiff class and the underlying claims." Dennis v. Kellogg Co., 83 Fed. R. Serv. 3d (Callaghan) 461, at *13 (9th Cir. 2011). Otherwise, the award may "answer to the whims and self interests of the parties, their counsel, or the court." Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th

1  Cir. 2011). Therefore, "a driving nexus between the plaintiff class and the cy pres beneficiaries" must
2  exist. Nachshin, 663 F.3d at 1038.

3  Given that some of these factors cannot be fully assessed until the court conducts the final
4  approval hearing, "'a full fairness analysis is unnecessary at this stage.'" Alberto v. GMRI, Inc., 252
5  F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the preliminary approval stage, the
6  Court need only review the parties' proposed settlement to determine whether it is within the
7  permissible "range of possible judicial approval" and thus, whether the notice to the class and the
8  scheduling of a fairness hearing is appropriate. See 4 William B. Rubenstein et al., Newberg on Class
9  Actions § 11:25 (4th ed. 2002) (citations omitted); see also Alberto, 252 F.R.D. at 666 (citation
10 omitted).

11 After reviewing the Proposed Settlement in light of the above factors and the current stage of
12 the litigation, the Court concludes that preliminary approval is appropriate. The Proposed Settlement
13 appears to be the result of serious, informed, and non-collusive negotiations. Young v. Polo Retail,
14 LLC, No. 02-4546, 2006 WL 30500861, at *5 (N.D. Cal. Oct. 25, 2006). After several weeks of
15 negotiations, including a day-long mediation session before an experienced mediator, Plaintiffs'
16 counsel agreed to the Proposed Settlement in light of the uncertainties of trial and the costs, risks, and
17 delays associated with continued litigation. (Proposed Settlement ¶P; Patterson Decl. ¶¶2-3.)
18 Further, counsel in this case are particularly knowledgeable regarding the amount and likelihood of
19 obtaining relief given their experience litigating against Provide Commerce in a class action involving
20 similar factual and legal issues. In re EasySaver Rewards Litig., 737 F. Supp. 2d 1159 (S.D. Cal.
21 2010); (Patterson Decl. ¶3.; Proposed Settlement ¶P.) Proposed class counsel represents that the
22 settlement provides meaningful relief to the class. (Doc. No. 23-7 at 8.) The estimated total value of
23 benefits to the class exceeds $2.65 million, (Doc. No. 23-7 at 23), with each class member receiving
24 either a 20% Off Code or a combination of a $15 credit and a settlement fund disbursement. (See
25 generally Proposed Settlement.) Additionally, class members may opt-out if they believe the
26 Proposed Settlement does not adequately compensate them. (Proposed Settlement ¶3.10.)

27 Further, the cy pres award is within the "range of possible judicial approval." See 4 William
28 B. Rubenstein et al., Newberg on Class Actions § 11:25 (4th ed. 2002) (citations omitted). As the

- 10 -

1 Ninth Circuit has held, a "cy pres award must be guided by (1) the objectives of the underlying
2 statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote
3 from the plaintiff class." Dennis, 83 Fed. R. Serv. 3d (Callaghan) 461, at *13 (internal quotations and
4 citations omitted). Cy pres awards must be "tethered to the nature of the lawsuit and the interests of
5 the silent class members." Nachshin, 663 F.3d at 1039; see Dennis, 83 Fed. R. Serv. 3d (Callaghan)
6 461 (holding that the district court abused its discretion in approving a settlement in a false advertising
7 class action as the distribution of settlement funds to charities that feed the indigent, although a noble
8 cause, had "'little or nothing to do with the purposes of the underlying statutes or the class of plaintiffs
9 involved.'") (quoting Nachshin, 663 F.3d at 1039); Six (6) Mexican Workers v. Ariz. Citrus Growers,
10 904 F.2d 1301, 1308-09 (9th Cir. 1990) (disapproving a cy pres award in a class action involving
11 alleged violations of Arizona's worker protection statutes ("FLCRA") as the award to the Inter-
12 American Fund – an organization that did not have "a substantial record of service" or a limit to its
13 choice of projects to fund – did not best effectuate the goals of the FLCRA and the interests of the
14 silent class members). In the present case, the cy pres award is tethered to the nature of the lawsuit
15 as the award must be used to further research or education regarding internet privacy or data security.
16 (Proposed Settlement ¶2.2(b).) Unlike Six (6) Mexican Workers, this is not a case where the parties
17 agreed to award funds to an unknown organization that may in turn fund projects unrelated to the
18 purposes of the underlying statutes. Rather, the parties specifically directed that payments to
19 California Western be used to set up a program, professorship, etc. "regarding internet privacy or
20 internet data security." (Proposed Settlement ¶2.2(b).)

21 At this stage, the request for attorney's fees and costs of up to $640,000 – less than twenty-five
22 percent of the total settlement – appears to be reasonable as it is within the range of acceptable
23 attorney's fees in Ninth Circuit cases. See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482,
24 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorney's fees in the Ninth Circuit
25 is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Additionally,
26 the proposed incentive awards for the Named Plaintiffs of up to $5,000 each appear reasonable given
27 their efforts in this litigation. (Paterson Decl. ¶9); see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454,
28 457, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400

potential class members in $1.75 million settlement, where incentive payment constituted only 0.57% of the settlement fund).

For the foregoing reasons, the Court grants preliminary approval of the Proposed Settlement. The Court, however, reserves judgment on the reasonableness of the attorneys' fees for the final approval hearing.

## III.   Appointing Class Counsel

Traditionally, the choice of counsel has been left to the parties, "whether they sue in their individual capacities or as class representatives." In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002) (citation omitted). In determining whether plaintiff's counsel is adequate, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). In the present case, as already noted, Plaintiffs' counsel has extensive experience in consumer class actions. (Doc. No. 23-3, Exs. 2-5.) Accordingly, the Court grants Plaintiffs' motion to appoint the law firms Patterson Law Group, APC, Baron & Budd, P.C., Faruqi & Faruqi, LLP, and Bursor & Fisher, P.A as class counsel.

## IV.   Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), that provides the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

///

///

**A.     Content of the Notice**

In the present case, the content of the notice is adequate. It provides the following: a description of the lawsuit; a description of the settlement class and the class claims; a statement that class members may appear at the fairness hearing through an attorney; a statement that class members may exclude themselves from the settlement; a description of how class members may request exclusion; and a description of the effect on class members if the Court approves the Proposed Settlement. (See Doc. No. 23-2, Ex. B, "Class Notice.")

**B.     Method of Notice**

The proposed method of notice is reasonable. Class members will receive an email containing notice of settlement from the settlement claims administrator within sixty days from the date the Court preliminarily approves the Proposed Settlement. (Proposed Settlement ¶3.3(b).) For class members for which CMG does not have a valid email address, the claims administrator will mail a postcard containing notice of the settlement using U.S. direct mail. (Id. ¶3.3(c).) Additionally, the claims administrator will set up an internet website containing downloadable copies of the full notice of the settlement and the claim form to be used to claim payment from the settlement fund. (Id. ¶3.3(a).)

After reviewing the content and the proposed method of providing notice, the Court determines that the notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the Proposed Settlement.

**V.     Scheduling Fairness Hearing**

Finally, the Court sets the Final Approval hearing for Monday, April 29, 2013 at 10:30 a.m. Plaintiffs shall file a motion for final approval of the settlement, as well as any motions for fee awards and enhancement awards, on or before Monday, April 1, 2013.

**Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**:

    (1)    Plaintiffs' request for provisional certification of the class and subclass for purposes of the Proposed Settlement is granted;

    (2)    Plaintiffs' request to have Plaintiffs Cox, Lynch, and Hall appointed as class representatives is granted;

(3) Plaintiffs' request for preliminary approval of the Proposed Settlement is granted;

(4) Plaintiffs' request to have the law firms Patterson Law Group, APC, Baron & Budd, P.C., Faruqi & Faruqi, LLP, and Bursor & Fisher, P.A appointed as class counsel is granted;

(5) The form and manner of giving notice of the Proposed Settlement to the class members is approved; and

(6) The fairness hearing on the Proposed Settlement shall be held on Monday, April 29, 2013 at 10:30 a.m. Plaintiff shall file a motion for final approval of the settlement, as well as any motions for fees awards and enhancement awards, on or before Monday, April 1, 2013.

**IT IS SO ORDERED.**

DATED: November 19, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT