1  JAMES R. PATTERSON (#211102)
   ALISA A. MARTIN (#224037)
2  PATTERSON LAW GROUP
   402 West Broadway, 29th Floor
3  San Diego, California 92101
   Telephone: 619.398.4760
4  Facsimile:  619.756.6991
   jim@pattersonlawgroup.com
5  alisa@pattersonlawgroup.com

6
   *Plaintiffs' Co-Counsel and Proposed Class Counsel*
7  *[Additional Counsel Listed On Signature Page]*

8

9

10                IN THE UNITED STATES DISTRICT COURT

11           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

| 13  DANIEL COX, JOSEPH M. LYNCH, and | Case No. 11-CV-02711-H (RBB) |
|---|---|
| NICOLE HALL, on behalf of themselves | |
| 14  and all others similarly situated, | |
| | **CLASS ACTION** |
| 15                    Plaintiffs, | |
| | **MEMORANDUM OF POINTS AND** |
| 16                    v. | **AUTHORITIES IN SUPPORT OF** |
| | **MOTION FOR FINAL APPROVAL OF** |
| 17  CLARUS MARKETING GROUP, LLC, a | **CLASS ACTION SETTLEMENT AND** |
| Connecticut corporation; PROVIDE | **CERTIFICATION OF NATIONWIDE** |
| 18  COMMERCE, INC., a Delaware | **SETTLEMENT CLASS** |
| corporation; and DOES 1 through 50, | |
| 19  inclusive, | |
| | Date:  April 29, 2013 |
| 20                    Defendants. | Time:  10:30 a.m. |
| | Judge:  Hon. Marilyn L. Huff |
| 21 | Courtroom: 15A |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................I

TABLE OF AUTHORITIES ................................................................................. III

I.     INTRODUCTION ....................................................................................... 1

II.    BRIEF STATEMENT OF FACTS ............................................................. 2

       A.     Settlement Negotiations .................................................................. 2

       B.     Terms of the Settlement ................................................................. 3

       C.     Class Certification and Notice........................................................ 3

       D.     The Settlement Class Meets the Requirements for Certification ... 4

              1.  The Proposed Class Meets the Requirements of Rule 23(a)...... 5

                  i.   Numerosity ........................................................................ 5

                  ii.  Commonality...................................................................... 6

                  iii. Typicality .......................................................................... 6

                  iv.  Adequacy of Representation .............................................. 7

              2.  The Proposed Class Meets the Requirements of Rule 23(b)(3)... 8

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
       SETTLEMENTS ......................................................................................... 9

       A.     Standards Under Rule 23................................................................. 9

       B.     The Parties Could Identify the Strengths and Weaknesses  of Their
              Cases.............................................................................................. 11

       C.     The Settlement Appropriately Balances The Risks Of Litigation With
              The Benefit To The Class Of A Certain Recovery ....................... 11

              1.  The Risks of Continued Litigation........................................... 11

              2.  The Benefits of The Settlement................................................ 14

       D.     The Recommendations Of Experienced Counsel Heavily Favor
              Approval Of The Settlement ......................................................... 16

       E.     Counsel's Discovery Efforts. ....................................................... 17

       F.     The Lack Of Objections Raised By Class Members Demonstrates That
              The Settlement Should Be Given Final Approval ........................ 17

G.    No Government Participant or Intervenor.......................................................18

IV.   CONCLUSION.........................................................................................................19

1

# TABLE OF AUTHORITIES

2 **<u>Cases</u>**

3 *Amchem Prods. v. Windsor* ................................................................................ 9

4 *Apple Computer Sec. Litig.* ............................................................................. 13

5 *Baxter v. Intelius* ............................................................................................. 12

6 *Berry v. Webloyalty.com, Inc.* ........................................................................ 12

7 *Blackie v. Barrack* ............................................................................................ 9

8 *Bott v. Vistaprint USA, Inc.* ........................................................................... 12

9 *Boyd v. Bechtel Corp.* ..................................................................................... 10

10 *Cardizem CD Antitrust Litig.* ........................................................................ 17

11 *Dunleavy v. Nadler* ......................................................................................... 11

12 *Easysaver Rewards Litig.* ............................................................................ 7, 12

13 *Ellis v. Naval Air Rework Facility* ............................................................ 11, 16

14 *Ferrington v. McAfee, Inc.* ............................................................................. 12

15 *Fulford v. Logitech, Inc.* ................................................................................. 16

16 *Garner v. State Farm Mut. Auto Ins. Co.* .................................................. 10, 18

17 *Hanlon v. Chrysler Corp.* ......................................................................... 6, 9, 10

18 *Heritage Bond Litig.* ....................................................................................... 13

19 *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson,* ................... 6

20 *Johnson v. Gen. Mills, Inc.* ............................................................................. 13

21 *Keithly v. Intelius Inc.* ..................................................................................... 12

22 *Mazza v. Am. Honda Motor Co.* ..................................................................... 12

23 *Nat'l Rural Telecomms. Coop* .................................................................... 16, 17

24 *Officers for Justice v. Civil Serv. Comm'n* ................................................ 10, 16

25 *Pacific Enters. Sec. Litig.* ............................................................................... 16

26 *Rodriguez v. West Publ'g Corp.* .................................................................. 10, 15

27 *Tobacco II Cases* ............................................................................................... 8

28 *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ................................ 9

*Stearns v. Ticketmaster Corp.* ............................................................................... 12

*Stull v. Baker* ...................................................................................................... 10

*United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, ............................ 7

*Vasquez v. Coast Valley Roofing, Inc.* ................................................................... 11

*VistaPrint Corp. Mktg. and Sales Practices Litig..* ................................................ 12

*Weeks v. Kellogg Co* ............................................................................................... 8

*Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1982) .................................... 17

**<u>Rules & Other Authorities</u>**

Federal Rule of Civil Procedure 23(e) ........................................................... passim

Federal Rule of Civil Procedure 23(b)(3) ...................................................... passim

Class Action Fairness Act of 2005 ............................................................... 1, 18

Class Action Fairness Act, 28 U.S.C. § 1715 ............................................... 4, 18

*Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 at 480 (2010) ................. 9

Plaintiffs respectfully move for final certification of a settlement class and final approval of a class action settlement which provides substantial monetary and non-monetary benefits to the class members.

## I. INTRODUCTION

The parties have entered into a Settlement Agreement and Release (the "Settlement") that provides for meaningful and timely benefits and value for the class members.   The Settlement provides, among other benefits and/ or options: (i) the establishment of a non-reversionary cash fund ("Settlement Fund") of $500,000 from which eligible Subclass members may claim a cash payment of non-reimbursed fees charged by Clarus Marketing Group ("CMG") up to $36;   (ii) a fully transferable merchandise credit for $15 for online purchases at Provide Commerce websites, Proflowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com; and (iii) a fully transferable code for 20% off online purchases at Provide Commerce websites, Proflowers.com, RedEnvelope.com, Berries.com, and CherryMoonFarms.com.   The Settlement has an estimated value of at least *$2.65 million*.   As explained in detail herein, the Settlement is fair, reasonable, and adequate and merits final approval under Federal Rule of Civil Procedure 23(e) and the relevant provisions of the Class Action Fairness Act of 2005.

The compromise reached by the parties and reflected in the Settlement Agreement is the result of extensive arm's-length negotiations between experienced counsel, with the assistance of the Honorable Edward Infante (ret.).   In Plaintiffs' counsel's view, the Settlement reflects an excellent resolution of the parties' respective claims and defenses, is fair, reasonable, adequate, and confers substantial benefits to the approximately 1.13 million class members.

The reaction of the Class also supports approval of the Settlement.   Pursuant to the Preliminary Approval Order, the court-approved notice was disseminated to class via mail and email advising them of their rights under the Settlement, including their right to make a claim from the Settlement Fund, opt out of the settlement, or be heard by the Court.

Pursuant to the Preliminary Approval Order, the last day to file objections was March 19, 2013.  No class member has submitted a valid objection to the Settlement to date, and only 45 members timely opted-out.  In other words, 99.99% of the Class members are participating in the Settlement.

Given the substantial benefits conferred on the Class by the Settlement and the overwhelming support for the Settlement, Plaintiffs' counsel respectfully submit that it should be approved as fair, reasonable, and adequate and seek an order from this Court: (a) finally approving the proposed Settlement; and (b) certifying the Class and Subclass and appointing Class Representatives and appointing Class Counsel.

## II.   BRIEF STATEMENT OF FACTS

A more detailed, factual statement is in the Statement of Facts, Procedural History, and Mediation History set forth in Plaintiffs' Motion for Preliminary Approval and thus is incorporated herein, *see* Dkt. # 23, and in Declaration of James R. Patterson in Support of Unopposed Motion for Preliminary Approval ("Patterson Prelim. App. Decl."), Dkt. # 23-1.

### A.   Settlement Negotiations

After the filing of the respective actions, the Plaintiffs, by and through their respective counsel, conducted extensive investigations into the facts and law relating to the matters alleged in their respective complaints.  Concurrent with these investigations, Plaintiffs' counsel engaged in extensive arm's-length negotiations with Defendants' counsel regarding the terms of a possible settlement of these actions.  On or about April 10, 2012, the parties' counsel participated in a full-day private mediation session with a highly-respected mediator, the Hon. Edward A. Infante (ret.), to settle this case. Although the parties failed to agree on a complete resolution, the parties reached an agreement on the high-level terms of a class-wide settlement and agreed to continue their discussions on the remaining terms.  Over the next several months, counsel for all the parties spoke frequently and at length to discuss and negotiate the details and remaining terms.  As a result of the extensive investigation and negotiations, the parties reached an agreement in

principal regarding the substantive terms of the settlement.  Once the parties reached an agreement on all substantive terms, additional telephonic conferences were held to address the payment of attorneys' fees and expenses.  *See* Patterson Prelim. App. Decl. at ¶¶ 2-5.  On October 2, 2012, the Settlement Agreement was fully executed.

### B.   Terms of the Settlement

Class members were enrolled in the FreeShipping.com membership rewards program via Defendants' alleged deceptive tactics.  The Settlement provides that these members — on a non-claims made basis — are entitled to receive a fully transferable code for 20% off online purchases at any Provide Commerce website.

Subclass members never provided CMG with their payment information during the enrollment process.  Instead CMG obtained their payment information directly from Provide Commerce.  The Settlement requires Defendants to establish a non-reversionary cash fund of $500,000 ("Settlement Fund") from which Subclass members may submit a claim for reimbursement of all membership fees that were charged by CMG, but not previously reimbursed.  The Settlement further provides that all Subclass members who do not submit a reimbursement claim will automatically receive a fully transferable merchandise credit of $15 to use in any online purchase at a number of Provide Commerce websites ("$15 Credit").

### C.   Class Certification and Notice

Additionally, Defendants agreed to certification of approximately 1.13 million members, for purposes of settlement only, defined as:

> All persons who, between February 16, 2007 and the date of entry of the Preliminary Approval order, placed an order with a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com.

Patterson Prelim App. Decl., Ex. 1, Settlement Agreement, at 3.  Dkt. # 23-2.  Moreover, Clarus agreed to a Subclass consisting of approximately 130,000 members and is defined as:

> All persons who, between April 1, 2009 and December 13, 2009, placed an order with a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information).

Excluded from the Class and Subclass are: (a) Defendants; (b) any entities in which Defendants have a controlling interest or which have a controlling interest in Defendants; (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Defendants; and (d) the Judges presiding over this action and any of their employees or immediate family members. *Id.*, Ex. 1-B ("Full Notice").

On October 12, 2012, Plaintiffs moved, pursuant to Fed. R. Civ. P. 23(e), for entry of an order preliminarily approving the Settlement, provisionally certifying a nationwide settlement class and approving a procedure for and form of notice (the "Notice").

On November 19, 2012, this Court entered an Order preliminary certifying a nationwide settlement class and granting preliminary approval of the Settlement ("Preliminary Approval Order") (Dkt. # 27). Since that time, the settlement administrator has finalized and disseminated Notice to the class members across the United States by email and/or mail notice in accordance with the Preliminary Approval Order and the Settlement Agreement. *See* attached hereto Declaration of Jennifer M. Keough dated March 25, 2013 ("Keough Decl.") at ¶¶ 2-3.

The Attorney General of the United States and the attorney general of each state where class members reside were given notice in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). *See* Dkt # 24.

### D.    The Settlement Class Meets the Requirements for Certification

In connection with this Settlement, Plaintiffs seek final certification of the class that this Court previously conditionally certified in its Preliminary Approval Order. (Dkt. # 27). The class is defined as:

/ / /

> All persons who, between February 16, 2007 and the date of entry of the Preliminary Approval Order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com.

(Settlement Agreement ¶1.8.)  The class is represented by Named Plaintiffs Hall, Cox and Lynch. While Cox and Hall were enrolled via the datapass mechanism (i.e., they were never asked to re-enter their payment information, it was simply transmitted form Provide Commerce to Clarus to be charged), Plaintiff Lynch was enrolled through non-datapass means (i.e., Lynch was requested to enter payment information, but alleged that the disclosures were misleading and deceptive).

Additionally, Plaintiffs request certification of a Settlement Subclass, which includes:

> All persons who, between April 1, 2009 and December 13, 2009, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information) to enroll.

(*Id.* at ¶1.9).  Named Plaintiffs Cox and Hall are class representatives for the Settlement Subclass.  Each placed an order with Proflowers.com and was unknowingly enrolled in Freeshipping.com's club, neither entered any billing information or credit card information to Clarus, each only entered an e-mail address and ZIP code.

As discussed below, this case meets the four prerequisites of Rule 23(a) necessary to class certification: numerosity, commonality, typicality, and adequacy of representation.  In addition, the case satisfies the requirements of Rule 23(b)(3): predominance of common issues and superiority of the class action device.

### 1.    The Proposed Class Meets the Requirements of Rule 23(a)

#### i.    Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that the joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1).   Courts have found the

numerosity requirement to be satisfied when the class comprises 40 or more members. *See Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983) (numerosity generally met if the class consists of more than 40 members). Thus, the proposed class here, which includes approximately 1.13 million members, satisfies Rule 23(a)(1)'s numerosity requirement.

### ii.    Commonality

Rule 23(a)(2) requires that questions of law or fact are common to the proposed class. Fed. R. Civ. P. 23(a)(2).  Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in disparate legal remedies within the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In the absence of class certification and settlement, each individual class member would be forced to litigate core common issues of law and fact, including whether Class members were deceived by deceptive online promotional offers of "free shipping" and/or whether CMG adequately disclosed the terms of its free shipping offer to class members, Defendants' alleged common course of conduct in relation to the members of the Settlement class, and whether Plaintiffs' legal theories are sustainable.  Accordingly, the questions of law and fact are common with respect to each class member's claims.

### iii.    Typicality

Rule 23(a)(3) mandates that the proposed class representatives' claims be typical of those of the other members of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied where class representatives' claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.  Here, the same course of conduct gave rise to the proposed class representatives and proposed class members' claims.  The proposed class representatives and purported class members claim the same injury – enrollment in CMG's membership programs without their knowledge or consent. (Compl. ¶2.)  Thus, the proposed class representatives' claims are co-extensive with those of other class members.

### iv.    Adequacy Of Representation

Rule 23(a)(4) requires that the proposed class representatives "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement has two prongs: "(1) that the representative party's attorney be qualified, experienced and generally able to conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1988.  Both elements are satisfied here.

First, Daniel Cox, Joseph Lynch, and Nicole Hall and Class Counsel have adequately represented the Class and Daniel Cox and Nicole Hall and Class Counsel will adequately represent the Subclass.

Second, Plaintiffs have retained experienced counsel who are qualified to litigate this action. The law firms representing the proposed Settlement class have represented Plaintiffs in numerous defective product class actions over the past several decades and are among the nation's most respected firms involved in complex litigation.  *See* Patterson Decl., Ex. A (firm resume of Patterson Law Group), Declaration of David E. Bower ("Bower Decl. Ex. E"), Ex. A (firm resume of Faruqi & Faruqi, LLP), Declaration of L. Timothy Fisher ("Fisher Decl. Ex. C"), Ex. A (firm resume of Bursor & Fisher, P.A.), and Declaration of Bruce Steckler ("Steckler Decl. Ex. 3"), Ex. A (firm resume of Baron & Budd, P.C.).   Moreover, Plaintiffs' counsel represents that they are particularly knowledgeable regarding the facts and the law at issue in this case as counsel Steckler and Patterson are recently resolved similar litigation against Provide Commerce involving similar class allegations. *See, e.g., In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159 (S.D. Cal. 2010).

Third, the vigorousness of the litigation, as well as the length and difficult nature of the settlement negotiations, attest to the non-collusive nature of the Settlement.  Under the Settlement, all class members, including the proposed class representatives, will receive substantial benefits as detailed herein.

## 2.   The Proposed Class Meets the Requirements of Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class may be certified only where common issues of law or fact "predominate over any questions affecting only individual members . . . " and class action device "is superior to other available methods for the fair[] and efficient[] adjudicati[on] of the controversy." Fed. R. Civ. P. 23(b)(3).  Here, Defendants' conduct is equally relevant to each class member's claims and damages.  Here, a significant issue is whether CMG's free shipping offer adequately disclosed, if at all, that by accepting the offer, Plaintiffs and class members were authorizing CMG to enroll them in CMG's membership programs and authorizing CMG to charge a monthly fee. Another significant issue is whether Plaintiffs and class members authorized Provide Commerce to provide their private payment information to CMG. Both issues are common to the class and are capable of resolution in a single adjudication as there is no allegation that the disclosures made by CMG or Provide Commerce differed materially during the relevant period.  *See* Compl.  Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues.  *See Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading).  Additionally, some of the significant individual issues may not require individualized proof. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (holding that plaintiffs need not prove individual reliance under the fraudulent prong under the UCL if "there is a showing that a misrepresentation was material").

The only real distinction among class members is whether they placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com. or whether they placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information) to enroll.

However, such variations do not defeat class certification. *See Blackie v. Barrack*, 524 F.2d 891, 905-06 (9th Cir. 1975).

Furthermore, employing the class device here will not only achieve economies of scale for class members, but will also conserve the resources of the judicial system, preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent the inconsistent adjudications of similar issues and claims. *See Hanlon*, 150 F.3d at 1023. There is no other mechanism by which all of the class members' claims will be as fairly, adequately, and efficiently resolved as through a class action. In addition, because the action will now settle, issues of manageability relating to the trial of the action are of no consequence. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

## III.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.  Standards Under Rule 23

When faced with a motion for final approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 at 480 (2010).

Although the Court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)). "[I]n evaluating whether the settlement is fair and adequate, the Court's function is not to second guess the settlement's terms." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *21 (N.D. Cal. Apr. 22, 2010). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. The parties have reached an arm's-length agreement and there are no valid objectors out of over a million class members.

In approving a proposed settlement of a class action under Rule 23(e), the Court must find that the proposed settlement is "fair, reasonable and adequate." The factors to be considered in evaluating the fairness of a class action settlement include the following:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *Rodriguez v. West Publ'g. Corp.*, No. CV05-3222 R (MCx), 2007 U.S. Dist. LEXIS 74767, at *25 (C.D. Cal. Sept. 10, 2007). The list of factors is not exhaustive and should be tailored to each case. *See Staton*, 327 F.3d at 959.

As explained below and in the Declarations submitted herewith, all relevant criteria show that this settlement warrants the Court's approval.

Moreover, "[t]he recommendation of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (citing *Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976)). The presumption of reasonableness in this action is fully warranted because the settlement is the product of adversarial, non-collusive, and arms'-length negotiations between multiple parties. It is

the considered judgment of counsel for the parties that this settlement is a fair, reasonable and adequate resolution of this litigation.

**B.    The Parties Could Identify the Strengths and Weaknesses of Their Cases**

Plaintiffs' counsel in this Action have conducted extensive investigation and analysis of the allegations against Defendants and their respective defenses.   Patterson Prelim. App. Decl. ¶6.   Plaintiffs' counsel were thoroughly familiar with the applicable facts, legal theories and defenses.   *Id.*   Thus, Plaintiffs' counsel had sufficient information to assess the merits of their claims.   *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (there was sufficient evidence before the parties to allow them to consider the strengths and weaknesses of their respective cases).

**C.    The Settlement Appropriately Balances The Risks Of Litigation With The Benefit To The Class Of A Certain Recovery**

To determine whether the proposed settlement is fair, reasonable and adequate, the court should balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of a recovery.   *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000).   The benefits of settlement and Plaintiffs' chances of success are typically evaluated together.   *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.") (internal quotation marks omitted). Although Plaintiffs have thoroughly developed the factual and legal bases for their claims and have gathered substantial evidence showing the conduct alleged was deceptive and illegal, one cannot ignore significant risks in continuing the litigation had settlement not occurred.

**1.    The Risks Of Continued Litigation**

The risks associated with continued litigation are perhaps best illustrated by the

sharp disagreement among the district courts of whether Plaintiffs' claims are even actionable. This case is one of several federal lawsuits challenging the online marketing practice of retailers sharing consumers' billing information for purposes of ongoing "reward club" type memberships, many of which have been dismissed by the district courts on the grounds that the offer details and disclosures associated with enrollment in similar online reward clubs are not deceptive as a matter of law. *See Berry v. Webloyalty.com, Inc.,* No. 10-CV-1358-H (CAB), 2011 WL 1375665, at *14 (S.D. Cal. Apr. 11, 2011); *In re VistaPrint Corp. Mktg. and Sales Practices Litig.,* MDL No. 4:08-md-1994, 2009 WL 2884727, at *12 (S.D. Tex. Aug. 31, 2009), *aff'd, Bott v. Vistaprint USA, Inc.,*392 Fed. Appx. 327, 328 (5th Cir. 2010); *Baxter v. Intelius*, No. SACV 09-1031-AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sep. 16, 2010). *See also In re EasySaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1172 (S.D. Cal. Aug. 13, 2010) (finding the overall process may be deceptive; upholding plaintiffs' claims); *Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1267-69 (W.D. Wash. 2011) (same); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *9-11 (N.D. Cal. Oct. 5, 2010) (same).

Another risk Plaintiffs would face going forward is whether their claims would be certified and be maintained as a class through trial. Defendants deny that class certification is appropriate in this case. Defendants are expected to vigorously opposed class certification and argue that choice-of-law issues render the proposed class unmanageable, *see, e.g., Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 594, 596 (9th Cir. 2012) (holding that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.... Because the law of multiple jurisdictions applies here … variances in state law overwhelm common issues and preclude … a single nationwide class"), and that individual issues, including whether some Class members intended to enroll in the reward program undermine the required commonality and typicality for certain of Plaintiffs' claims. *See, e.g., Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011), *cert. denied*, 132

S. Ct. 1970 (2012) (holding in a rewards program case that the district court did not err in refusing to certify a Consumers Legal Remedies Act class of plaintiffs). *But see Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519, 522 (C.D. Cal. 2011) ("[T]he fact that some people have bought the [product] for other reasons does not sufficiently rebut an inference of materiality to defeat certification….).

The Court could refuse to certify the Class in part or in whole if Defendants were able to present convincing case law and facts to support their position. This would effectively wipe out any recovery for more than a million people, leaving only the named Plaintiffs to pursue their individual claims.

It is likely that absent this settlement there would be time-consuming litigation and motion practice and the outcome of any additional motion practice in these actions, including motions for summary judgment, wholly uncertain. Patterson Prelim. App. Decl. ¶ 3.

Although Plaintiffs believe their claims are meritorious, further litigation to establish liability poses a significant risk to any recovery for the class. Assuming Plaintiffs were to survive all motions for summary judgment, the risks of establishing liability posed by conflicting testimony and evidence would be exacerbated by the unpredictability of a lengthy and complex trial. In addition, even if plaintiffs were to prevail on the issue of liability, there would still be risks in establishing the existence of monetary damages.

The experience of Plaintiffs' counsel has taught them that the above-described factors can make the outcome of a trial extremely uncertain. *See In re Heritage Bond Litig.*, MDL Case No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005). Moreover, even if Plaintiffs were to prevail at trial, risks to the class remain. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100 million. However, weeks later, Judge Ware overturned the verdict,

entering judgment n.o.v. for the individual defendants, and ordered a new trial with respect to the corporate defendant.  Therefore, careful consideration of the above risks supports approval of the settlement as fair, reasonable and adequate.

### 2.      The Benefits Of The Settlement

Faced with these substantial risks, the benefits to the Class are overwhelmingly favorable.   Valued at more than $2.6 million, the proposed Settlement provides meaningful relief to all Class members, and perhaps as importantly, disgorges a significant amount from the Defendants in both cash ($500,000) and credit ($15 Credits). The lawsuit also contributed to Defendants by changing their business practices and curtailing the underlying conduct on which Plaintiffs' claims are premised.   Thus, Settlement provides substantial benefits that are directly in line with the allegations in the Complaint.

In exchange for a release of claims and subject to this Court's approval, Defendants have agreed that:

(1)    The settlement administrator will directly email every Class member who is not a Subclass member a 20% Off Code.  No Class Member will be required to submit a claim form to receive this code.  (Settlement Agreement ¶at p. 5)

(2)    The settlement administrator will directly email every Subclass member who is not eligible or otherwise chooses not to make a claim for a monetary payment from the Settlement Fund a $15 Credit.  The 20% Off Code and $15 Credit will be fully transferable and valid for one year for online purchases at Proflowers.com, RedEnvelope.com, Berries.com and CherryMoonFarms.com.  (*Id.* at pp. 5-6.)

(3)    Defendants will fund a $500,000 Settlement Fund that eligible Subclass members can make claims against for reimbursement of their out of pocket payments for membership fees up to $36.00.  (*Id.* at pp. 5-6.)

To make a claim from the Settlement Fund, Subclass members need only visit the neutral settlement administrator's website, a link to which is provided to them via the direct email notice, and submit a claim form signed under penalty of perjury.  Patterson Prelim. App. Decl., Ex. 1, Exhibit C ("Summary Notice").  Subclass members will ***not*** be required to submit documents or other proof of having been charged to make a claim.  *Id.* The settlement administrator will evaluate and calculate all claims for payment based upon Defendants' records.  Claims will be paid on a *pro rata* basis up to $36.00.  *Id.*, Ex., 1, Exhibit B.  The parties must meet and confer in good faith to resolve any disputed claims, with CMG's records being entitled to a rebuttable presumption of accuracy.  *See Id.*, Ex. 1, at 10.  The Settlement Fund is non-reversionary and any remaining funds will be distributed as a *cy pres* award, subject to Court approval, to California Western School of Law to fund a chair, professorship, fellowship, lectureship, seminar series, or similar funding, gift, or donation program developed and coordinated between Provide Commerce and California Western School of Law relating to internet privacy or internet data security.  *Id.* at 6.

The Merchandise Code available to Subclass members is particularly relevant and valuable here because one of the allegations in the lawsuit is that subclass members were offered, and requested, a rebate on their shipping charges to enroll in Freeshipping.com. (Compl., ¶ 17; *see also id.* at ¶ 20 ("Start your NO COST 30-day review period with our compliments and claim the introductory cash-back rebate on your shipping charges, up to $15.00.").  Under the Settlement subclass members receive at least the benefit originally offered in a fully transferrable form, thus substantiating its cash value.  At the time of settlement, these websites offered an array of items under $15, but subclass members may use the money towards larger purchases as well.  Patterson Prelim App. Decl. ¶ 8.

This Settlement offers substantial benefits and avoids the substantial risks associated with continued litigation.  "In this case, the negotiated amount is fair and reasonable no matter how you slice it.  There is no evidence of fraud, overreaching, or collusion." *Rodriguez*, 563 F.3d at 965.  "[T]his Settlement … guarantees a recovery that

is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery … at all." *Fulford v. Logitech, Inc.*, No. C-08-2041 MMC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).   The very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes."   *Officers for Justice*, 688 F.2d at 624 (citation omitted). *See also Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands).   Accordingly, that the class potentially could have achieved a better recovery after trial should not preclude the Court from finding that the Settlement is appropriate for approval.

### D.   The Recommendations Of Experienced Counsel Heavily Favor Approval Of The Settlement

Experienced counsel, adversarial negotiating at arm's-length, have weighed the factors discussed above and endorsed the Settlement.  As courts have stated, the view of the attorneys actively conducting the litigation, while not conclusive, is accorded great weight. *See Nat'l Rural Telecomms. Coop*, 221 F.R.D. at 528; *see also Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").   Courts give considerable weight to counsel's view because the settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither chooses to risk litigating to final resolution.   *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

This action has been litigated and the Settlement negotiated by experienced and competent counsel.  Plaintiffs' counsel are well known for their success in complex and class action litigation.  Likewise, defense counsel are from a law firm with an abundance of experience in this type of litigation.  That such qualified and well-informed counsel all

endorse the Settlement as being fair, reasonable, and adequate to the class heavily favors this Court's approval of the Settlement.

### E.    Counsel's Discovery Efforts.

Plaintiffs' counsel's discovery efforts began before the lawsuits were even filed and have been ongoing through over a year of litigation.  Counsel's investigation includes extensive online research, requests for responses to written questions and two categories of documents from Provide Commerce and CMG, and reviewing and analyzing documents and other information produced by the Defendants.

### F.    The Lack Of Objections Raised By Class Members Demonstrates That The Settlement Should Be Given Final Approval

"A certain number of opt-outs and objections are to be expected in a class action.  If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; *Boyd*, 485 F. Supp. at 624 (finding settlement fair and reasonable even when objections were leveled by 16% of the class).  In addition, once preliminary approval has been granted, a settlement is presumptively reasonable and the objector must overcome a heavy burden to prove that the settlement is unreasonable.  *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1982).

Here, more than 1,404,905 Summary Notices were sent via e-mail and an additional 178,499 Summary Notices were mailed to class members.  This is in addition to the Internet Publication facilitated through the settlement website www.ShippingRebateMembershipSettlement.com.  The time period for objecting to the Settlement expired on March 25, 2013.  To date, not a single objection was filed[1] and only 45 exclusions were received (less than 0.003%).  An additional 17 timely invalid

---

[1] Recently, one letter was filed that did not meet the criteria for a proper objection. *See* Docket No. 32. The letter merely informed the court that the class member was weighing his options—did not want to object or opt-out of the class.

Exclusions Requests were received, which may be cured.[2] Keough Decl. ¶¶ 6-7. Therefore, the reaction to the Settlement from the Class had been overwhelmingly positive.

### G.      No Government Participant or Intervenor

No governmental entity is a party to this action.  However, in compliance with the notice provision of the Class Action Fairness Act, 28 U.S.C. § 1715, notice of this Settlement was provided to the U. S. Attorney General, and the Attorneys General of each of the 50 states in which Settlement Class members may reside.[3]

> Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."

*Garner*, 2010 U.S. Dist. LEXIS, at *37.

Here, because no Government entity contacted Class Counsel, we presume that there were no objections.

/ / /

/ / /

/ / /

---

[2] Class members who submitted invalid Exclusion Request will be sent a deficiency letter providing them with an opportunity to cure and deficiency. *See* Keough Declaration ¶ .
[3] This Court has already found that the notice provided to state and federal officials pursuant to Class Action Fairness Act ("CAFA") was adequate.  Preliminary Approval Order at 5.

## IV.   CONCLUSION

This Settlement is an excellent resolution of this litigation given the current procedural posture of the case, the strength of evidence obtained to date, the presence of skilled counsel for all parties, the complexity of facts at issue, the risks of continuing the litigation, the present benefit of the Settlement to class members and the arm's-length negotiations.  Therefore, for the reasons set forth herein and in the accompanying Declarations, Plaintiffs respectfully request this Court approve the Settlement of the actions as fair, reasonable and adequate.

Dated: April 2, 2013                              PATTERSON LAW GROUP

By:   _____*/s/ James R. Patterson*_____
                James R. Patterson

James R. Patterson, State Bar No. 211102
Alisa A. Martin, State Bar No. 224037
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone:  (619) 756-6990
Facsimile:  (619) 756-6991
jim@pattersonlawgroup.com
alisa@pattersonlawgroup.com

Bruce Steckler, *pro hac vice pending*
THE STECKLER LAW FIRM
12700 Park Central Drive, Suite 1900
Dallas, TX 75251
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
bruce@stecklerlaw.com

David E. Bower, State Bar No. 119546
FARUQI & FARUQI, LLP
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
dbower@faruqilaw.com

L. Timothy Fisher, State Bar No. 191626
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com

Scott A. Bursor, State Bar No. 276006
BURSOR & FISHER, P.A.
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

*Plaintiffs' Co-Counsel and Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 2, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4, and that all parties herein are represented by counsel have consented to electronic service.

*/s/  James R. Patterson*
James. R. Patterson