# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COX, JOSEPH M. LYNCH, and NICOLE HALL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARUS MARKETING GROUP, LLC., a Connecticut corporation; PROVIDE-COMMERCE, INC., a Delaware corporation; and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO. 11-CV-2711 H (RBB)<br><br>**ORDER:**<br><br>**1. Certifying a Class and Subclass for Purposes of Settlement;**<br><br>**2. Granting Final Approval of the Proposed Settlement;**<br><br>**3. Approving the Requested Award of Attorneys' Fees and Costs; and**<br><br>**4. Approving the Requested Incentive Awards for Plaintiffs Cox, Hall, and Lynch.** |

On November 20, 2012, the Court issued an order preliminarily certifying a class and subclass for settlement purposes, granting preliminary approval of the parties' proposed settlement, appointing class representatives and class counsel, approving class notice, and scheduling a final fairness hearing for April 29, 2013. (Doc. No. 27.) On March 13, 2013, Plaintiffs Daniel Cox, Joseph M. Lynch, and Nicole Hall filed a motion for approval of an attorney award of $640,000 and incentive awards for the class representatives of $5,000 each. (Doc. No. 30-1.) On April 2, 2013, Plaintiffs filed a

motion for final approval of the proposed settlement and a final certification of a nationwide settlement class and subclass. (Doc. No. 33-1.) Defendants Clarus Marketing Group LLC ("CMG") and Provide-Commerce filed notices of non-opposition to Plaintiffs' final approval motion, (Doc. No. 34,) and no proposed class members have filed objections to the proposed settlement. The Court held a final fairness hearing on April 29, 2013. Attorneys Alisa Martin and Timothy Fisher appeared on behalf of Plaintiffs; attorneys Leo Norton and Blake Bilstad appeared on behalf of Defendants. No objections were raised to the proposed class settlement, attorney fee award, or incentive award at the hearing.

## Background

**A.  Facts**

This case arises out of Defendants' allegedly unfair and unlawful offer for "free shipping" to online customers shopping on websites owned and operated by Provide Commerce, Inc. ("Provide Commerce"). Plaintiffs allege that while completing their online purchases on Provide Commerce's website ProFlowers.com, a pop-up window was generated containing a coupon offer for free shipping. (Doc. No. 1, "Compl." ¶17.) Upon clicking the pop-up window, Plaintiffs allege they were directed to an interface operated by Clarus Marketing Group, LLC ("CMG") and presented with an offer for free shipping on their current transaction, plus free shipping rebates on twelve future orders from ProFlowers.com. Id. To accept the offer, Plaintiffs allege that they were asked to enter their email address and zip code. Id. Plaintiffs allege that they were never informed that by accepting the offer, they were authorizing CMG to enroll them in CMG's membership programs, FreeShipping.com Insider's Club or FreeShipping.com ("FreeShipping.com"). Id. Plaintiffs allege that as members of FreeShipping.com, they were charged a monthly fee between $9 and $20. (Id. ¶1.) Plaintiffs allege that they did not supply CMG with their private payment information. (Id. ¶¶17, 25.) Rather, Plaintiffs allege that Provide Commerce provided their information to CMG without their knowledge or consent. Id.

**B.     Procedural History**

On February 16, 2011, Plaintiff Daniel Cox and then-plaintiff Bradley Berentson commenced a civil action in the Northern District of California. <u>Daniel Cox, et al. v. Clarus Marketing Group, LLC, et al.</u>, No. 11-cv-0729 (DMR). On March 24, 2011, the case was reassigned to the Honorable Saundra Brown Armstrong. (Doc. No. 23-2, "Proposed Settlement," ¶A.)

On March 29, 2011, then-plaintiffs Mark McKnight and James Wilson filed a civil action in the Northern District of California. <u>Mark McKnight, et al. v. Clarus Marketing Group, LLC, et al.</u>, No. 11-cv-1501 (MEJ). On April 8, 2011, the case was reassigned to Judge Armstrong. (Proposed Settlement ¶B.)

On April 8, 2011, Plaintiff Nicole Hall filed a civil action in the Northern District of California. <u>Nicole Hall v. Clarus Marketing Group, LLC, et al.</u>, No. 11-cv-1757 (LB). On May 2, 2011, the case was reassigned to Judge Armstrong. (Proposed Settlement ¶C.)

On April 20, 2011, Plaintiff Hall and then-plaintiffs McKnight and Wilson filed a motion to consolidate the <u>Cox</u>, <u>McKnight</u>, and <u>Hall</u> actions. (Proposed Settlement ¶D.)

On April 29, 2011, Plaintiff Joseph Lynch filed a civil action in the Southern District of California. <u>Joseph M. Lynch v. Clarus Marketing Group, LLC, et al.</u>, No. 11-cv-0913 (BEN); (Proposed Settlement ¶E.)

On May 4, 2011, Plaintiff Lynch filed a notice of voluntary dismissal. (Proposed Settlement ¶F.) On May 19, 2011, Plaintiff Cox filed an amended complaint adding Plaintiff Lynch as a new plaintiff and dropping then-plaintiff Berentson. (Proposed Settlement ¶G.)

Then-plaintiffs Wilson and McKnight and Plaintiff Hall filed notices of voluntary dismissal of their respective actions. (Proposed Settlement ¶¶H-J.) On November 14, 2011, Plaintiffs Cox and Lynch filed a notice of voluntary dismissal of the <u>Cox</u> action. (Proposed Settlement ¶K.)

On November 18, 2011, Plaintiffs filed this action, a putative class action against Defendants CMG and Provide Commerce, asserting causes of action against one or both Defendants for (1) RICO violations, 18 U.S.C. § 1962(c); (2) violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693; (3) declaratory relief; (4) conversion; (5) negligence; (6) invasion of privacy under the California Constitution; (7) invasion of privacy; (8) violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §1770(a); (9)-(10) unlawful, unfair and fraudulent business practices in violation of Cal. Bus. & Prof. Code §17200; (11) violation of the Connecticut Unfair Trade Practices Act; and (12) violation of the Michigan Compiled Laws § 600.2919a. (See generally Compl.)

Shortly thereafter, Plaintiffs requested that Defendants provide discovery materials, including documents relating to insurance agreements and data concerning class size and revenues generated by Defendants' practices. (Doc. No. 23-1, "Patterson Decl.," ¶7.) Defendants responded to Plaintiffs' discovery requests by producing certain documents on November 22, 2011. Id. On April 10, 2012, the parties participated in a day-long mediation session before an experienced mediator. (Id. ¶¶2-3.) With the mediator's assistance, the parties reached a settlement in principle. Id. On May 25, 2012, Provide Commerce and CMG filed separate answers to the complaint, in which they denied Plaintiffs' allegations and raised various defenses. (Doc. Nos. 13, 14.) On October 2, 2012, the parties entered into a Proposed Settlement. (Patterson Decl. ¶4; Proposed Settlement.)

**C.    Proposed Settlement**

The Proposed Settlement provides relief to a proposed class comprising all persons who, between February 16, 2007 and the date of the Court's order granting preliminary approval, placed an order on a website operated by Provide Commerce and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com. (Proposed Settlement ¶1.8.) The Proposed Settlement provides additional relief to a proposed subclass comprising all persons who, between April 1, 2009 and December

13, 2009, placed an order on a Provide Commerce website and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his email address and zip code without any additional contact or billing information. (Id. ¶1.9.)

For class members who are not subclass members, Provide Commerce agrees to provide each a 20% Off Code that is fully transferable and valid for purchases on certain Provide Commerce websites. (Id. ¶2.1.) The 20% Off Code expires one year after distribution and is subject to certain "black out" dates. Id. For subclass members, Provide Commerce agrees to provide a fully transferable $15 credit that is valid for purchases on certain Provide Commerce websites. (Id. ¶2.3.) The $15 credit also expires one year after distribution and is subject to certain "black out" dates. Id. In addition to the $15 credit, Provide Commerce agrees to establish a non-reversionary settlement fund of $500,000. (Id. ¶2.2.) Eligible subclass members will receive payment "equal to the amount of fees that the Subclass Member paid to CMG for FreeShipping.com, less any partial refund or chargeback received for such fees, up to a maximum payment of $36.00." (Id. ¶2.2(a).) To receive payment, subclass members must submit a claim form stating, among others, that they did not knowingly authorize their enrollment in FreeShipping.com and did not take advantage of any benefits of FreeShipping.com. Id. Subclass members who received a full refund or chargeback, or who were not charged fees at all, will not be eligible to receive payment from the fund, but they may still receive the $15 credit. Id. If the claims exceed the amount of the fund, the payments will be reduced on a pro-rated basis such that the total payments do not exceed the amount of the fund. Id. Any unclaimed portion will be paid to the California Western School of Law to be "used for a chair, professorship, fellowship, lectureship, seminar series, or similar funding, gift, or donation program developed and coordinated between Provide Commerce and California Western School of Law . . . regarding internet privacy or internet data security." (Id. ¶2.2(b).)

Class members who wish to opt-out must have notified the settlement claims

administrator by March 19, 2013.[1]  (Id. ¶3.10; Doc. No. 33-2 ("Keough Decl."), Ex. A at p. 4.)  Named Plaintiffs agreed not to seek incentive awards in excess of $5,000 per plaintiff.  (Id. ¶2.4.)  Class counsel agreed not to seek an award for attorneys' fees and costs in excess of $640,000.  (Id. ¶2.5.)

In exchange, class members, other than those who opt-out, agree to release all claims against Defendants that are based on facts, omissions or other conduct that have been or could have been alleged in this action.  (Id. ¶4.2.)

**Discussion**

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is fundamentally fair, adequate, and reasonable.  Id.

**I.   Class Certification**

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a).  Fed. R. Civ. P. 23(b).  Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3).  In the present case, Plaintiffs seek to certify both a class and a subclass for purposes of settlement.  As defined in the Proposed Settlement, the class includes:

> All persons who, between February 16, 2007 and the date of entry of the Preliminary Approval Order, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com.

(Proposed Settlement ¶1.8.)  The subclass includes:

---

[1] As of March 25, 2013, the claims administrator received forty-five timely valid requests to opt-out and seventeen timely, invalid requests to opt-out. (Keough Decl. ¶6.) Each class member that submitted an timely but invalid opt-out request will be given an opportunity to cure the deficiencies in their applications. (Id.)

- 6 -

> All persons who, between April 1, 2009 and December 13, 2009, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information) to enroll.

(Id. ¶1.9.)

### A.  Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Class counsel estimates that the proposed class consists of approximately 1.13 million members. (Doc. No. 33-1 at p. 6.) Such a large number of class members is far too numerous to be joined as plaintiffs in this lawsuit. Accordingly, the numerosity prerequisite is met in this case.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. "The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011)). Here, whether CMG adequately disclosed the terms of its free shipping offer to class members and whether the promotional offers were deceptive are issues that are common to the class. In addition, whether providing an email address and zip code is sufficient to consent to enrollment in CMG's membership programs is an issue common to the subclass. The

determination of those issues will resolve issues that are central to the validity of each proposed class and subclass members' claims. Accordingly, the Court concludes that the commonality prerequisite is met.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(c). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). Here, both the named Plaintiffs and purported class and subclass members suffered the same alleged injury–enrollment in CMG's membership programs without their knowledge or consent. (Compl. ¶2.) As Plaintiffs' claims are reasonably co-extensive with the claims of absent class members, the typicality prerequisite is met.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiffs and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there does not appear to be any conflicts of interest between Plaintiffs and the absent class members. Additionally, Plaintiffs have pursued the interests of the absent class members by retaining counsel with particular experience in consumer class actions and by assisting counsel with case investigations. (Doc. Nos. 30-2, 30-3, 30-4, and 30-5.) Moreover, Plaintiffs' counsel is particularly knowledgeable regarding the facts and the law at issue in this case as they recently resolved litigation against Provide Commerce involving similar class allegations. See In re Easysaver Rewards Litig., 737 F. Supp. 2d 1159 (S.D. Cal. 2010). Accordingly, the adequacy of representation requirement is met in this case.

For the foregoing reasons, Plaintiffs have met all of the requirements of Rule

23(a).

## B. Rule 23(b)(3)

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Hanlon, 150 F.3d at 1022-23. Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

### 1. Predominance

The predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). This analysis requires more than proof of common issues of law and fact. Id. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted).

Here, a significant issue is whether CMG's free shipping offer adequately disclosed, if at all, that by accepting the offer, Plaintiffs and class members authorized CMG to enroll them in CMG's membership programs with a monthly fee. Another significant issue is whether Plaintiffs and class members authorized Provide Commerce to provide their private payment information to CMG. Both issues are common to the class and are capable of resolution in a single adjudication as there is no allegation that the disclosures made by CMG or Provide Commerce differed materially during the relevant period. (See Compl.) Courts have found that common factual issues involving

a single advertisement seen by all class members can predominate over individual issues. See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading); cf. Gonzalez v. P&G Co., 247 F.R.D. 616, 622-23 (S.D. Cal. 2007) (refusing to certify consumer class action as evidence showed that defendant "employed a wide variety of representations in its labeling, television commercials, website promotions, and other promotions" and, thus, class members may have relied on different representations or may not have been exposed to any of the allegedly false representations). With respect to the proposed subclass, the primary issue–whether entering an email address and zip code constitutes lawful authorization for Provide Commerce to supply subclass members' private payment information to CMG and lawful authorization for CMG to charge a monthly fee–is common to the subclass. (Doc. No. 23-7 at p. 26.) Accordingly, the Court concludes that the issues common to both the proposed class and subclass predominate over the potential individual issues, especially given that some of the significant individual issues, such as reliance, may not require individualized proof. See In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009) (holding that plaintiffs need not prove individual reliance under the fraudulent prong under the UCL if "there is a showing that a misrepresentation was material").

With this being a proposed nationwide class action, the Court is aware that there may be potential individual issues generated by variations in state law; however, neither the Defendants nor any objectors have informed the Court as to whether the applicable state laws contain material differences with respect to this litigation. See Mazza, 666 F.3d at 590-91 (noting that the predominance inquiry focuses not on whether two or more state laws are involved, but rather whether the applicable state laws differ materially); see also Hanlon, 150 F.3d at 1022 ("Variations in state law do not necessarily preclude a 23(b)(3) action.") As such, the predominance requirement is

1  met.

2  **2.    Superiority**

3  The superiority inquiry requires a determination of "whether objectives of the
4  particular class action procedure will be achieved in the particular case." Hanlon, 150
5  F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be
6  superior if "classwide litigation of common issues will reduce litigation costs and
7  promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th
8  Cir. 1996) (citation omitted). Here, classwide treatment of these issues will be efficient
9  as the class members' claims involve a relatively small amount of damages per member.
10 (Compl. ¶1); see Hanlon, 150 F.3d at 1023. Accordingly, the superiority requirement
11 is met here.

12 For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule
13 23(b)(3). Accordingly, the Court grants final certification to the proposed class and
14 subclass for purposes of the Proposed Settlement.

15 **II.    The Settlement**

16 Rule 23(e) requires the court to determine whether a proposed settlement is
17 "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting
18 Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a
19 number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense,
20 complexity, and likely duration of further litigation; (3) the risk of maintaining class
21 action status throughout the trial; (4) the amount offered in settlement; (5) the extent of
22 discovery completed, and the stage of the proceedings; (6) the experience and views of
23 counsel; (7) the presence of a governmental participant; and (8) the reaction of class
24 members to the proposed settlement. Id. In addition, the settlement may not be the
25 product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig.,
26 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d
27 1268, 1290 (9th Cir. 1992)). Where a proposed settlement contains a charitable gift,
28 known as a cy pres award, a court must "ensure that the settlement retains some

1  connection to the plaintiff class and the underlying claims." Dennis v. Kellogg Co., 697
2  F.3d 858, 865 (9th Cir. 2012) (finding that the noble goal of feeding the indigent has
3  little or nothing to do with the concerns embodied in California's consumer protection
4  laws such as the UCL and CLRA). Otherwise, the award may "answer to the whims
5  and self interests of the parties, their counsel, or the court." Nachshin v. AOL, LLC,
6  663 F.3d 1034, 1039 (9th Cir. 2011). Therefore,"a driving nexus between the plaintiff
7  class and the cy pres beneficiaries" must exist. Nachshin, 663 F.3d at 1038.

8      After reviewing the Proposed Settlement in light of the above factors and the
9  current stage of the litigation, the Court concludes that final approval is appropriate.
10 The estimated total value of benefits to the class exceeds $2.65 million, (Doc. No. 23-7
11 at 23), with each class member receiving either a 20% off code or a combination of a
12 $15 credit and a settlement fund disbursement. (See generally Proposed Settlement.)
13 After several weeks of negotiations, including a day-long mediation session before an
14 experienced mediator, class counsel agreed to the Proposed Settlement in light of the
15 uncertainties of trial and the costs, risks, and delays associated with continued litigation.
16 (Proposed Settlement ¶P; Patterson Decl. ¶¶2-3.) Such a large settlement greatly
17 benefits the class given the potential weaknesses in the Plaintiff's cases as well as the
18 risks and costs of continued litigation. See, e.g., Berry v. Webloyalty.com, Inc., Case
19 No. 10-1358, 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) (dismissing complaint
20 alleging improper enrollment in online membership programs). Additionally, class
21 counsel's endorsement of the settlement is entitled to considerable weight, especially
22 in this case given class counsel's experience litigating against Provide Commerce in a
23 class action involving similar factual and legal issues. See Ellis v. Naval Air Rework
24 Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980). Further, class members were given an
25 opportunity to opt-out if they believed that the Proposed Settlement does not adequately
26 compensate them. (Proposed Settlement ¶3.10.) The fact that only sixty-two out of
27 over one million class members filed timely requests to opt-out indicates that the vast
28

majority of class members reacted favorably to the proposed settlement.[2] See Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 577 (9th Cir. 2004).

Further, a driving nexus exists between the plaintiff class and the cy pres beneficiaries. Nachshin, 663 F.3d at 1038. In the present case, the cy pres award is tethered to the nature of the lawsuit as the award must be used to further research or education regarding internet privacy or data security. (Proposed Settlement ¶2.2(b).) This is not a case where the parties agreed to award funds to an unknown organization that may in turn fund projects unrelated to the purposes of the underlying statutes. Rather, the parties specifically directed that payments to California Western be used to set up a program, professorship, etc., "regarding internet privacy or internet data security." (Proposed Settlement ¶2.2(b).) Accordingly, the Court concludes that the proposed settlement satisfies the requirements of Rule 23(e).

## III. Attorneys' Fees and Costs

"Because the attorneys seek fees on their own behalf, which may be contrary to their clients' interests, the district court must 'look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid." Fischel v. Equitable Life Assurance Society of the U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (quoting Florida ex rel. Butterworth v. Exxon Corp., 109 F.3d 602, 608 (9th Cir. 1997)). In common fund cases, a district court has discretion to use two either the percentage-of-the-fund or lodestar method for determining appropriate attorneys' fees. See Hanlon, 150 F.3d at 1029. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Id. In cases in which injunctive relief provides a significant aspect of the class recovery, courts typically use a lodestar calculation. Id. "The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." Id. "The hours expended and the rate should be supported by adequate documentation and other

---

[2] To date, there have been fifty valid, timely requests for exclusion. (Doc. No. 37; Ex. A.) The Court grants the parties' joint motion to file a supplemental declaration containing the final exclusion list.

- 13 -

1  evidence." Id.

2      Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Where there is no evidence of collusion, an agreement between the parties on attorneys' fees is entitled to significant weight, especially where the attorneys' fees are paid separate and apart from the fund provided to class members. See, e.g., In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 1992 U.S. Dist. LEXIS 14337, at *12-13 (C.D. Cal. June 10, 1992).

    After considering the factors announced in Vizcaino, the Court concludes that class counsel's request for $640,000 in attorneys' fees and costs is reasonable. The attorney fee award is paid separate and apart from the settlement fund provided to class members, (see Proposed Settlement,) and there is no evidence of collusion between class counsel and the Defendants. Thus, the agreement as to the attorney fee award is accorded great weight. In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 1992 U.S. Dist. LEXIS 14337, at *12-13.

    Additionally, the requested attorney fee award appears reasonable under the lodestar method. Counsel devoted 1,012.8 total hours to this litigation resulting in a lodestar value of $609,397.50. (Doc. No. 30-2 ¶13.) Additionally, counsel incurred out-of-pockets expenses of $26,410.27. Counsel submitted detailed statements showing the amount of hours worked and hourly rate of each attorney on specific tasks as well as an itemized list of the costs incurred. (Doc. No. 30-2, Exs. 1 and 2; Doc. No. 30-3, Exs. 1 and 2; Doc. No. 30-4, Exs. A and B; Doc. No. 30-5 ¶¶8-15.) The Court concludes that the hours spent and the hourly rates charged by the attorneys appear

reasonable in light of the experience of counsel and the complexities of this case. In requesting $640,000 in attorneys' fees and costs, counsel requests a 1.007 multiplier. Such a small multiplier is reasonable, especially given the sizeable settlement award and the timely relief it provides.

Further, counsel's attorney fee request is reasonable under the percentage approach. Class counsel and the Defendants value the settlement at $2.65 million. (Doc. No. 30-1 at pp. 14-15.) Although the settlement does not provide for a common fund in the traditional sense, the request for $640,000 in attorneys' fees and costs represents approximately 24.1% of the settlement value. Thus, it is below the benchmark award in this circuit. Hanlon, 150 F.3d at 1029. Accordingly, the Court approves an attorney fee award in the amount of $640,000.

## IV.   Incentive Awards

Finally, the $5,000 incentive award for Plaintiffs Cox, Hall, and Lynch is also reasonable. "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

After reviewing the factors announced in Van Vranken, the Court concludes that the requested incentive awards for the named Plaintiffs is reasonable. The $5,000 incentive award is well within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech, Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases awarding service payments ranging from $5,000 to $40,000). Such an award is reasonable here given the named Plaintiffs' efforts advancing the interests of the absent class members by retaining counsel with particular experience in consumer class actions and by assisting counsel with case investigations. (Doc. Nos.

1  30-2, 30-3, 30-4, and 30-5.)  As such, the Court approves a $5,000 incentive award for
2  Plaintiffs Cox, Hall, and Lynch.

## **Conclusion**

For the reasons stated above, it is hereby ordered that:

1. **Class.**  The class is defined as:

   > All persons who, between February 16, 2007 and November 19, 2012, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com. Excluded from the Class are (a) Provide Commerce and CMG, (b) any entities in which Provide Commerce or CMG have a controlling interest or which have a controlling interest in Provide Commerce or CMG, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or CMG, and (d) the Judges presiding over the Action and any of their employees or immediate family members.

2. **Subclass.**  The subclass is defined as:

   > All persons who, between April 1, 2009 and December 13, 2009, placed an order with a website operated by Provide Commerce, Inc. and were subsequently enrolled in FreeShipping.com's Insider's Club or FreeShipping.com by entering his or her email address and zip code (as opposed to additional contact and billing information) to enroll. Excluded from the Subclass are (a) Provide Commerce and CMG, (b) any entities in which Provide Commerce or CMG have a controlling interest or which have a controlling interest in Provide Commerce or CMG, (c) the officers, directors, employees, subsidiaries, affiliates, and attorneys of Provide Commerce or CMG, and (d) the Judges presiding over the Action and any of their employees or immediate family members.

3. **Binding Effect of Order.**  This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all class members (including subclass members), including those who did not properly request exclusion under Paragraph 6 of the Preliminary Approval of Class Settlement and Provisional Class Certification Order.  This order does not bind persons who filed timely and valid Requests for Exclusion.  Attached as Exhibit A is a list of persons who properly requested to be excluded from the settlement.

4. **Release.** Plaintiffs and all Class Members who did not properly request exclusion are: (1) deemed to have released and discharged Defendants from all claims arising out of or asserted in this action and all claims released under the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims. The full terms of the release described in this paragraph are set forth in Sections 4.2 and 4.3 of the Settlement Agreement.

5. **20% Off Code.** Provide Commerce will provide one 20% Off Code by email to each Class Member who is not a Subclass Member as set forth in Sections 2.1 and 3.13 of the Settlement Agreement no later than twenty-five (25) calendar days after the Final Settlement Date, which is defined under Section 1.13 of the Settlement Agreement.

6. **$15 Credit.** Provide Commerce will provide one $15 Credit by email to each Subclass Member who is not an Authorized Claimant for a Settlement Payment from the Settlement Fund as set forth in Sections 2.3 and 3.14 of the Settlement Agreement no later than twenty-five (25) calendar days after the Final Settlement Date, which is defined under Section 1.13 of the Settlement Agreement.

7. **Settlement Fund.** Defendants will pay a total of $500,000 to establish the Settlement Fund according to the timeline set forth under Section 2.2 of the Settlement Agreement.

8. **Attorney's Fees and Costs.** Class counsel is awarded $640,000 in fees and costs. Defendants, through the Claims Administrator, must pay class counsel this amount according to the timeline set forth in Section 2.5 of the Settlement Agreement.

9. **Incentive Awards.** Plaintiffs Daniel Cox, Joseph Lynch, and Nicole Hall

are each awarded $ 5,000 as an incentive award. Defendants, through the Claims Administrator, must pay Plaintiffs these amounts according to the timeline set forth in Section 2.4 of the Settlement Agreement.

10. **Settlement Payments.** Defendants, through the Claims Administrator, must make Settlement Payments from the Settlement Fund to Authorized Claimants according to Section 2.2(a) of the Settlement Agreement by mailing Settlement Payments to Authorized Claimants no later than twenty-five (25) calendar days after the Final Settlement Date, which is defined under Section 1.13 of the Settlement Agreement.

11. **Remainder.** Any unclaimed portion of the Settlement Fund after mailing of Settlement Payments to Authorized Claimants and after any mailed Settlements are returned to the Claims Administrator as undeliverable must be paid to California Western School of Law with the payment specified to be used for a chair, professorship, fellowship, lectureship, seminar series, or similar funding, gift, or donation program developed and coordinated between Provide Commerce and California Western School of Law (depending on the amount of the remainder) regarding internet privacy or internet data security. Defendants, through the Claims Administrator, must mail or wire the payments from the Settlement Fund according to the timeline set forth in Section 2.2(b) of the Settlement Agreement.

///
///
///
///
///

12. **Dismissal of Action and Court's Jurisdiction.** Upon entry of judgment, this Action, including all of the individual and class claims included therein, is hereby dismissed on the merits and with prejudice. Pursuant to the parties' request, the Court will retain jurisdiction over this action and the parties until final performance of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: April 29, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT